### In re Alan L. HILL, Debtor.

### No. 06–32725.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

April 29, 2008.

Lester R. Thompson, Dayton, OH, for Debtor.

### Decision Granting the Chapter 13 Trustee's Objection and Denying the Debtor's September 10, 2007 Plan Modification

GUY R. HUMPHREY, Bankruptcy Judge.

This contested matter is before the court on the Chapter 13 Trustee's objection to the Debtor's proposed modification of his confirmed Chapter 13 plan. This court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), which concerns "confirmations of plans."

For the reasons explained below, the Debtor's proposed modification cannot be confirmed.

### Procedural and Factual Background

The Debtor, Alan L. Hill, filed a Chapter 13 petition on September 26, 2006 (Doc. 1). His case is therefore governed by the changes to Chapter 13 made through the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). On March 7, 2007, this court entered an order confirming a Chapter 13 plan which provided monthly payments of $236 for sixty (60) months with a dividend of sixteen percent (16%) to nonpriority unsecured creditors (Doc. 32). However, the Chapter 13 Trustee and the Debtor, consistent with prior agreed orders (Docs.28, 41), modified the plan to provide monthly payments of $330 and a one hundred percent (100%) dividend to nonpriority unsecured creditors (Doc. 46).[1] The Debtor is an above median family income[2] debtor and, therefore, his current plan is based on the Debtor's current monthly income (CMI)[3] minus his

---

1. At the time of confirmation of the original plan, the Debtor and Chapter 13 Trustee agreed to modify the plan after the issuance of the court's decision in *In re Kolb*, 366 B.R. 802 (Bankr.S.D.Ohio 2007), which was adopted by this Judge in a later decision, *In re Anderson*, 383 B.R. 699 (Bankr.S.D.Ohio 2008).

2. The term "median family income" is defined in 11 U.S.C. § 101(39A).

3. CMI is a newly defined term under the Bankruptcy Code as amended by BAPCPA.11 U.S.C. § 101(10A).

statutorily defined § 707(b)(2)(A) expenses.[4]

On September 10, 2007, the Debtor proposed a further modification which would reduce his monthly payments to nonpriority unsecured creditors to $236, with a sixteen percent (16%) dividend (Doc. 43), which are the same amounts that he proposed in his original plan (Doc. 2). The Debtor's basis for this proposed second modification to the plan is a state domestic relations court order concerning a domestic support obligation [5] of the Debtor in the amount of $1,719.00 each month (the "DSO") (Doc. 43, p.4–5).

The Debtor's amended Schedule I, attached to the September 10, 2007 proposed modification, lists the Debtor's actual monthly net income as $3,715.93 (Doc. 43, p. 6, line 6).[6] The Debtor's CMI, set forth in the Debtor's amended Official Form B22C, is $5,285.46 (Doc. 20, p. 2, line 14).

The Debtor's amended Form B22C (Doc. 20) lists the following expenses:

| | |
|---|---|
| IRS National Standard for Food, Clothing, Household Supplies, Personal Care, and miscellaneous | $1,017.00 |
| IRS Local Standard for Housing and Utilities/Non–Mortgage Expenses | $ 402.00 |
| IRS Local Standard for Housing and Utilities/Mortgage/Rent Expenses | $ 793.00 |
| IRS Local Standard for Transportation Operating Expense | $ 275.00 |
| IRS Local Standard for Transportation Ownership Expense | $ 460.17 |
| Taxes | $1,304.37 |
| Other Necessary Expense: Mandatory Payroll Deductions | $ 82.00 |
| Other Necessary Expense: Life Insurance | $ 36.86 |
| Health Insurance | $ 12.97 |
| Charitable Contributions | $ 9.17 |
| Secured Debt expenses (average 60 month payment) | $ 10.83 |
| Priority Claims (Cure amount/60) | $ 61.67 |
| Chapter 13 administrative expense | $ 10.62 |
| Total | $4,475.66 [7] |

These expenses are based on the expenses provided for in the language of § 707(b)(2)(A). Sometimes the expenses provided by § 707(b)(2)(A) incorporate the Debtor's actual expenses, but often they do not. The Debtor's Schedule J expenses (Doc. 43, p. 7–8), which are the Debtor's asserted actual expenses, are as follows:

| | |
|---|---|
| Rent or Mortgage Payment | $ 865.00 |
| Electricity and Heating Fuel | $ 160.00 |
| Water and Sewer | $ 45.00 |
| Telephone | $ 20.00 |
| Cable | $ 59.00 |
| Cell Phone | $ 120.00 |
| Food | $ 250.00 |

4. For a detailed explanation of these confirmation standards for an above median family income debtor, see In re Anderson, 383 B.R. 699 (Bankr.S.D.Ohio 2008).

5. For the definition of a domestic support obligation, see 11 U.S.C. § 101(14A).

6. The Debtor's monthly net income deducts taxes, insurance and 401K deductions. In completing the disposable income calculation on Official Form B22C, these expenses are subtracted from CMI.

7. See the Debtor's Amended Form B22C (Doc. 20, line 52). The Debtor separately listed an $800 expense for support "provided for dependents not in the household." (Doc. 20, line 59).

| | |
|---|---|
| Clothing | $ 25.00 |
| Laundry and Dry Cleaning | $ 10.00 |
| Medical and Dental Expenses | $ 20.00 |
| Transportation (Excluding Car Payment) | $ 100.00 |
| Homeowner's or Renter's Insurance | $ 15.33 |
| Automobile Payment | $ 71.60 |
| Voluntary Support for Wife & child [8] | $1,719.00 |
| **Total** | **$3,479.93** |

Without reviewing these expenses on a line by line item basis [9], it is only necessary to note that the Debtor's proposed modification is premised upon a wholesale substitution of his actual income for his CMI and his Schedule J expenses for his § 707(b)(2)(A) expenses.

### Issues

The issues presently before the court are straightforward: When may a Chapter 13 above median family income debtor modify his confirmed Chapter 13 plan? Related to this issue, the parties have raised the question of whether 11 U.S.C. § 1325(b), including the disposable income formula and the projected disposable income requirement, is incorporated into Chapter 13's modification provision, 11 U.S.C. § 1329. The Chapter 13 Trustee has argued that the disposable income formula and the projected disposable income requirement of § 1325(b) are incorporated into § 1329 and the Debtor has taken the contrary position.

### Analysis

### 11 U.S.C. § 1329 Continues to Authorize Modifications of Chapter 13 Plans, Including to Increase or Reduce the Amount of Payments on Claims of a Particular Class, Including the Class of Nonpriority Unsecured Creditors

The mechanism to change the binding effect of confirmed Chapter 13 plans is § 1329. *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 194 (6th Cir.BAP 1998), citing *In re Witkowski*, 16 F.3d 739, 745 (7th Cir.1994). *In Witkowski*, the Seventh Circuit held that while confirmation of a debtor's plan constitutes a final judgment on the merits, the common law doctrine of *res judicata* does not prohibit modifications that otherwise would be permissible under § 1329. *Witkowski*, 16 F.3d at 745. Modification of a Chapter 13 plan under § 1329 is discretionary. *Brown*, 219 B.R. at 192. Bankruptcy courts may consider changed circumstances in the exercise of this discretion to approve modifications to plans under § 1329. *Id.* at 195.[10] "[T]he only limits on

---

**8.** The current state of the support obligation, including whether the support is voluntary, is unclear from this record. The $1,719 figure appears to arise from the February 21, 2007 temporary order of the state court (Doc. 43, p. 4–5) and is the Debtor's reason for modification (Doc. 43, p. 1). However, the record does not show a final order from the state court and the Debtor refers to voluntarily paying $1,000 each month (Cf. Doc 43, p. 7, line 19).

**9.** A true comparison of the Schedule J expenses and the Form B22C expenses cannot

be made because they are described, calculated, and grouped differently from each other.

**10.** The court notes that, although raised by the parties, the narrow exception for "special circumstances" found in 11 U.S.C. § 707(b)(2)(B) is a confirmation issue and not a post-confirmation modification issue. *Kolb* never discusses post-confirmation modification, except to raise the question this decision addresses. *In re Kolb*, 366 B.R. 802, 817, n. 21 (Bankr.S.D.Ohio 2007).

modification are those set forth in the language of the Code itself, coupled with the bankruptcy judge's discretion and good judgment in reviewing the motion to modify." *In re Powers,* 202 B.R. 618, 622 (9th Cir.BAP 1996).

Accordingly, the court must first turn to § 1329 to determine the extent to which Chapter 13 plan modifications are permissible. After considering that section and any other pertinent sections of the Code, the court may exercise its sound discretion in determining whether a modification should be approved. Section 1329 provides as follows:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to-
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;—or
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates that—
>
> (A) such expenses are reasonable and necessary;
>
> (B)(i) if the debtor previously paid for health insurance, the amount is not ma-

terially larger than the cost the debtor previously paid or the cost necessary to maintain the lapsed policy; or

> (ii) if the debtor did not have health insurance, the amount is not materially larger than the reasonable cost that would be incurred by a debtor who purchases health insurance, who has similar income, expenses, age, and health status, and who lives in the same geographical location with the same number of dependents who do not otherwise have health insurance coverage; and
>
> (C) the amount is not otherwise allowed for purposes of determining disposable income under section 1325(b) of this title;
>
> and upon request of any party in interest, files proof that a health insurance policy was purchased.
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
>
> (c) A plan modified under this section may not provide for payments over a period that expires after *three years* the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329.[11]

■ Prior to the enactment of BAPCPA, § 1329 was interpreted to permit the debtor, the Chapter 13 Trustee, and unsecured creditors to file modifications allow-

---

11. The text in italics represents language added and the strikeout text is language removed by the enactment of BAPCPA.

ing upward or downward adjustments of plan payments in response to changes in the debtor's financial circumstances. *See Barbosa v. Soloman*, 235 F.3d 31, 40 (1st Cir.2000); and *In re Fields*, 269 B.R. 177, 180 (Bankr.S.D.Ohio 2001). The BAPCPA amendments to § 1329 do not evidence a change in the ability to make such upward or downward adjustments through a modification. In particular, § 1329(a)(1) continues to provide that "the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to ... increase or reduce the amount of payments on claims of a particular class provided for by the plan[.]" BAPCPA does not change this broad language.

In a recent BAPCPA decision from the Sixth Circuit, the court noted that "[t]he Supreme Court, addressing amendments to the Bankruptcy Code, has determined that 'when Congress amends the bankruptcy laws, it does not write on a clean slate,' and therefore, the 'Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.' " *AmeriCredit Fin. Svcs., Inc. v. Long (In re Long)*, 519 F.3d 288, 297 (6th Cir.2008), *quoting Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (internal quotation marks omitted). Upon a careful review, the court finds nothing in the limited legislative history of BAPCPA, contained within the House of Representatives Judiciary Committee Report, to indicate that § 1329 was

intended to be changed to limit the ability of a debtor to reduce or increase the amount of payments to creditors. See H.R.Rep. No. 109–31(I) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88. Accordingly, the court finds no principled basis to interpret § 1329(a) any differently than it was interpreted prior to the enactment of BAPCPA.

### 11 U.S.C. § 1325(b) is not Incorporated into 11 U.S.C. § 1329

Despite the flexibility of § 1329, the Chapter 13 Trustee has argued that the disposable income formula and the projected disposable income requirement of § 1325(b) are incorporated into § 1329 and that the Debtor's proposed modification should be denied because the modification does not meet those standards. The Debtor argues that § 1329 does not incorporate § 1325(b) and, therefore, he does not need to comply with those standards. This issue is significant because if § 1325(b) is incorporated into § 1329, many modifications could be barred because a debtor's CMI and, in the case of above median family income debtors, many of the expenses that are used in determining "disposable income" under § 1325(b), are fixed as of the petition date.

Section 1325(b), as revised by BAPCPA, provides for the calculation of disposable income and also provides that the debtor's "projected disposable income" must be paid to nonpriority unsecured creditors over the "applicable commitment period." *In re Anderson*, 383 B.R. 699, 703–13 (Bankr.S.D.Ohio 2008). Prior to the enactment of BAPCPA, case law was divided as to whether the plan confirmation requirements of § 1325(b) should apply to post-confirmation modifications under § 1329.[12]

---

**12.** See, *e.g., In re Solis*, 172 B.R. 530 (Bankr. S.D.N.Y.1994) (holding § 1325(b) is incorporated into § 1329) and *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768 (9th Cir.BAP 2005) (holding § 1325(b) is not incorporated into § 1329).

Although cited by neither party, the court will briefly address the decision of the Sixth Circuit in *Freeman v. Schulman (In re Freeman)*, 86 F.3d 478 (6th Cir.1996). The holding in *Freeman* concerned whether a tax refund related to pre-petition income, which was included in a confirmed plan, was considered

After reviewing the plain meaning of the language of § 1329, the court finds that the better, plain meaning interpretation of this section is that it does not incorporate § 1325(b). The court bases its holding on the references in § 1329(b)(1) to various, specific Chapter 13 subsections, which include § 1325(a), but do not include § 1325(b). Section 1329(b)(1) states that "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." As succinctly stated in a recent decision, "[s]ection 1329 expressly applies certain specific Code sections to plan modifications but does *not* apply § 1325(b). Period." *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768, 781 (9th Cir.BAP 2005), *quoted by In re Ewers*, 366 B.R. 139, 142 (Bankr.D.Nev.2007) (emphasis in original).

The arguments for incorporating § 1325(b) into § 1329 are particularly unconvincing when weighed against the plain meaning of § 1329(b)(1). It is true that by requiring a debtor to comply "with the provisions of this chapter and other appli-

cable provisions of this title," § 1325(a) indirectly incorporates § 1325(b). However, interpreting such indirect reference as evidencing Congress' intent to incorporate § 1325(b) into § 1329 renders the specific references to the subsections recited in § 1329(b)(1) redundant.

Further, the court finds the separate reference in § 1325(a) to "[e]xcept as provided in subsection (b)" in § 1325(a) does not demonstrate an intent to incorporate § 1325(b). This indirect incorporation of § 1325(b) proves unworkable when compared to a similar cross-reference in § 1329(b)(1). Specifically, Congress, in drafting § 1329(b)(1), deemed it necessary to directly incorporate 11 U.S.C. § 1322(a) and (b), despite the fact that § 1322(b) begins by referencing subsection (a). A comparison of these indirect references in § 1322(b) and § 1325(a) clarifies that when Congress wanted to incorporate a particular subsection of Chapter 13 into § 1329, it did so explicitly, directly and unambiguously.[13]

disposable income even if the refund would be exempt under state law. Although the case arose in the context of a debtor modification, the Sixth Circuit never discusses the issue of whether § 1325(b) should be incorporated into § 1329. Further, the court's decision did not address any of the changes Congress made to § 1325(b) and its effect on § 1329 because it was issued prior to the enactment of BAPCPA. See generally Collier on Bankruptcy, ¶ 1329.03, p. 1329–7–1329–8 (15th ed. rev.2007) (noting that the discrete references to § 1325(b) in § 1329 were added and Congress chose not to provide that § 1325(b) "applies in all aspects to modifications.").

**13.** The BAPCPA amendments to § 1329 do not provide any convincing argument to change this non-incorporation analysis. One reading of the reference to the "applicable commitment period" of § 1325(b)(1)(B) in § 1329(c) is an attempt by Congress, consistent with the purpose of the statute prior to

the enactment of BAPCPA, to address plan length under § 1329. See also *In re Anderson*, 383 B.R. 699, 711–13 (Bankr. S.D.Ohio 2008) (applicable commitment period has a temporal aspect). The reference to § 1325(b) in § 1329(a)(4)(C), which is part of a larger subsection addressing the very narrow issue of modifications for health insurance premiums, might be understood as a congressional attempt to avoid a debtor "double-dipping" on an expense previously accounted for in the disposable income test at confirmation. Regardless of the reasons for these two narrowly focused changes to § 1329, the more significant point is Congress never changed the incorporation statutory subsection for modification— § 1329(b)(1). The following BAPCPA decisions do not incorporate § 1325(b) into § 1329: *In re Ireland*, 366 B.R. 27 (Bankr.W.D.Ark.2007); *In re Ewers*, 366 B.R. 139 (Bankr.D.Nev.2007); *In re Girodes*, 350 B.R. 31 (Bankr.M.D.N.C. 2006); and *Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (8th Cir.BAP 2008).

## The Debtor's Modification Cannot Be Approved

■ Having determined that § 1329(a)(1) allows for the modification of confirmed Chapter 13 plans to reduce or increase the amount of payments to nonpriority unsecured creditors and other classes of creditors and that the § 1325(b) disposable income test is not incorporated into § 1329, the court must determine whether the specific modification proposed by this Debtor should be approved. In this instance, the modification seeks to deviate from the currently confirmed plan by substituting the Debtor's actual income and expenses reflected in his amended Schedules I and J in place of his CMI and expenses incorporated through his currently confirmed plan, which was based on the § 1325(b) formula. The only specific explanation for this change concerns one particular expense—the DSO.[14] The Debtor has provided the court with an insufficiently detailed factual assertion to support his modification to adjust his CMI. Similarly, the only adjustment to expenses that can be justified in the Debtor's modification motion is for the DSO because the modification does not even assert any other reason to adjust the originally confirmed plan. Under the particular circumstances of this case [15], the court cannot confirm a plan which seeks a wholesale substitution of the means test formula with amended Schedules I and J.

The court cannot allow this Debtor to adjust the entire formulaic budget upon which his modified plan was confirmed and return to Schedules I and J, based on one particular expense (the DSO). It is almost impossible for an above median family income debtor's disposable income to ever match the reality of his or her income and expenses at confirmation. Therefore, if a debtor could always modify his plan to incorporate his actual income and expenses post-confirmation, regardless of the narrowness of the reason asserted, the means test formula would have limited effect in Chapter 13.[16]

However, it is equally true that the confirmation standards of § 1325(b) are not the same as the standard for a § 1329 modification. A debtor's income and expenses may undergo changes for a variety of reasons and § 1329 allows the court to consider such changes. Specifically, § 1329(a)(1) provides the flexibility for modifications to "increase or reduce the amount of payments on claims of a particular class provided for by the plan[.]" The court cannot read the plain meaning of § 1329 to be forever bound by § 1325(b) because, as noted earlier, Congress, aware of the function of the means test in Chapter 13 relating to confirmation of original plans, could have made that policy decision plain in the language chosen for BAPCPA and did not amend either 1) § 1329(a)(1) to limit the flexibility to change payments to classes of creditors, particularly the class

---

**14.** The record is unclear as to whether the DSO is a new expense. The Debtor is seeking to return to the original monthly payment in the confirmed plan in this case, which was also based on Schedules I and J. Although some of the figures are different (Cf. Doc. 1, p. 22 and Doc. 43, p. 7), the end result is the same $236 monthly net income.

**15.** Any further modification the Debtor may choose to file should explain the status of the DSO, to what extent the DSO is a new ex-

pense, and the bases for any other adjustments to the Debtor's income and expenses.

**16.** It is worth noting that Chapter 13 postconfirmation modifications are reviewed by the court upon an appropriate objection. Absent such an objection, this court is likely to approve such modifications pursuant to its Local Rules which generally dispense with hearings absent the filing and service of an objection to the requested relief.

of nonpriority unsecured creditors, or 2) amend § 1329(b)(1) to incorporate § 1325(b) into § 1329.

This decision does not provide a definitive answer on the appropriateness of any particular modification; however, modifications have always been subject to court discretion, as limited by § 1329. As noted by the 7th Circuit, "all proposed modifications need not be approved and in practice not all modifications are approved." *Witkowski*, 16 F.3d at 746. A concern in some instances may be whether a modification represents a good faith attempt to adjust for post-confirmation changes in a debtor's economic life or simply an attempt to avoid the rigid formula Congress has imposed upon the Chapter 13 Trustee, the debtors and the creditors who seek redress with this court. Cf. *id.* (the court noting that "lack of good faith can be shown by manipulation of code provisions."). Good faith and other strictures remain requirements of approval of modifications. See 11 U.S.C. § 1329(b)(1). The court also may need to balance the requirement to pay nonpriority unsecured claimants to the greatest extent possible on their allowed claims while still providing the flexibility § 1329 affords [17] in allowing a debtor to seek a "fresh start" in the bankruptcy court. Objections as to future proposed modifications will be considered based on the particular facts of each individual case.

### Conclusion

For the foregoing reasons, the Debtor's proposed plan modification filed on September 10, 2007 (Doc. 43) is **denied.**

The court is simultaneously entering an order consistent with this Decision.

---

**17.** Congress eliminated much of this discretion at the time of confirmation by re-defining the disposable income test. *In re Anderson,* 383 B.R. 699, 705 (Bankr.S.D.Ohio 2008).