**In re Donnie Ray BUCK and Flora Ann Buck, Debtors.**

**No. 07–41187–MGD.**

United States Bankruptcy Court, N.D. Georgia, Rome Division.

Nov. 10, 2010.

Robert S. Toomey, Law Office of Robert S. Toomey, PC, Cartersville, GA, for Debtors.

### ORDER DENYING POST–CONFIRMATION MODIFICATION OF DEBTORS' CHAPTER 13 PLAN

MARY GRACE DIEHL, Bankruptcy Judge.

This matter is before the Court on Debtors' Post–Confirmation Modification of Chapter 13 Plan ("Modification"). (Docket No. 33). The Chapter 13 Trustee ("Trustee") objected to the proposed Modification. (Docket No. 35). A hearing on this matter was held on September 15, 2010, at which time the Court requested that the parties submit briefs on the matter. Both parties filed briefs and a continued hearing was held on October 27, 2010. At the hearing, the Court announced its decision that the Trustee's objection would be overruled and that the plan as modified would become the plan pursuant to 11 U.S.C. § 1329(b)(2). The Court indicated that a written Order setting forth its ruling and rationale would be entered. Upon further review of the case law, the Court reconsidered its oral ruling and an Order to that effect was entered on November 2, 2010. (Docket No. 40). This Order memorializes the Court's ruling.

This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (L). The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1) and 1334(b).

### I. SUMMARY OF FACTS

Donnie Ray Buck and Flora Ann Buck ("Debtors") filed this Chapter 13 case on May 17, 2007. Debtors' Current Monthly Income was above the median income for a household of their size in Georgia.[1] As a

1. 11 U.S.C. § 101(10A) defines "current monthly income" as the "average monthly

result, the "applicable commitment period" ("ACP") for their plan was a 60–month term under 11 U.S.C. § 1325(b)(4)(A)(ii). Debtors' Form B22C indicated that Debtors had "zero" disposable income. The Chapter 13 Amended Plan ("Plan"), filed July 23, 2007, proposed to pay $340 per month for 60 months with a 0% dividend to unsecured creditors. This Plan was confirmed by the Court on July 26, 2007 with a recommendation for confirmation by the Trustee.

In December 2009, Debtor Donnie Ray Buck lost his job and has not obtained new employment. Debtors continued to make monthly payments in accordance with the Plan through June 2010, when Mr. Buck stopped receiving unemployment compensation. All secured claims have been paid in full and there are no priority claims to be funded. On July 6, 2010, Debtors filed this Modification. The Modification proposed to shorten the ACP of the Plan to 36 months. Debtors had already made payments for approximately 40 months. As a result of the proposed Modification, Debtors' case would be ready for discharge upon the filing of their § 1328(h) certificate and proof of completion of the personal financial management course required by 11 U.S.C. § 1328(g)(1).

The Trustee objected to the Modification on the grounds that Debtors had not supported the Modification with amended Schedules I and J and that the Modification provided for an improper ACP. Debtors filed amended Schedules I and J showing negative disposable income in excess of $1,900 per month. Thus, the only remaining objection by the Trustee is the proposed reduction of Debtors' ACP. The Trustee does not raise a good faith objection to Debtors' proposed Modification. No other creditor objected to the Modification.

## II. DISCUSSION

Debtors' proposed Modification and the Trustee's objection thereto present one issue for the Court: whether modification of a confirmed plan under § 1329 allows above-median Debtors to reduce their ACP. For the reasons set forth below, the Trustee's objection is sustained and Debtors' proposed reduction to their ACP is disapproved.

### A. The addition of the "Applicable Commitment Period" by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

One of the more significant changes made to Chapter 13 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) was the inclusion of an "Applicable Commitment Period" to replace the minimum duration of three years in the "best efforts test" of 11 U.S.C. § 1325(b)(1)(B). Pre–BAPCPA, the "best efforts test" of § 1325(b)(1)(B) required that when the trustee or the holder of an allowed unsecured claim objected to confirmation of the plan, the "best efforts test" had to be satisfied. One way to satisfy this test was that "the plan provides that all of the debtor's projected

income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii) . . ."

disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B) (2004). BAPCPA's revisions to § 1325(b) included the addition of the term "applicable commitment period" in the highly litigated projected disposable income requirement of § 1325(b)(1)(B).

Section 1325(b)(4) provides that the ACP is three years for debtors with annualized current monthly income of debtor and debtor's spouse that is below the median income for that state for a household of the size of debtor's household.[2] The ACP is five years for similarly situated above-median income debtors. Section 1325(b)(4)(B) allows the ACP to be less than the stated duration "only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B).

## B. The Applicable Commitment Period is a temporal concept

■ There is a split in authority among courts as to whether ACP is a durational plan requirement or merely a mandate that debtors must pay the equivalent of their monthly disposable income as reflected on Form B22C multiplied by the number of months in their ACP. These differing views have been termed the "temporal" and "multiplier" approaches, respectively. *Compare In re Frederick-*

son, 545 F.3d 652 (8th Cir.2008); *In re Fridley*, 380 B.R. 538, 544 (9th Cir. BAP 2007) ("After BAPCPA, the § 1325(b)(1) 'applicable commitment period' continues to operate as a temporal requirement. Nothing in the statutory structure suggests that Congress meant to alter this aspect of the statute."); *In re Dew*, 344 B.R. 655 (Bankr.N.D.Ala.2006); *In re Gress*, 344 B.R. 919 (Bankr.W.D.Mo.2006), *with In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C.2006); *In re Lopatka*, 400 B.R. 433, 440 (Bankr.M.D.Pa.2009) ("[the] temporal period is a reference to define the boundaries of the disposable income to be included in the plan.... It does not require the plan to extend for any certain length of time.").

In the Eleventh Circuit, however, this matter has been settled. In *In re Tennyson*, 611 F.3d 873 (11th Cir.2010), the Eleventh Circuit held that the ACP prescribes a minimum duration for an above-median income debtor's Chapter 13 Plan. *Id.* at 874. The facts of *Tennyson* involved an above-median income debtor whose Form B22C indicated that he had negative disposable income. *Id.* Using the multiplier approach, this debtor proposed that he had no ACP since he had no projected disposable income. *Id.* Under debtor's theory, an ACP was relevant only to determine the amount that must be paid to unsecured creditors during the term of the plan. *Id.* at 876. Accordingly, the above-

2. "For purposes of this subsection, the 'applicable commitment period'—

   (A) subject to subparagraph (B), shall be—
   (i) 3 years; or
   (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—
   (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

   (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
   (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4 ..." 11 U.S.C. § 1325(b)(4)(A).

median income debtor in *Tennyson* proposed a three-year plan and the Chapter 13 Trustee objected. *Id.* at 874. The Eleventh Circuit reversed the District Court, which had affirmed confirmation of the Plan by the Bankruptcy Court. *Id.* at 880. The Court held both that the plain reading of § 1325(b) required that ACP be a temporal term and that the legislative intent behind BAPCPA supported this reading. *Id.* at 879.

Significantly, the Eleventh Circuit stated:

Further, allowing Tennyson to confirm a plan for less than five years would deprive the unsecured creditors of their full opportunity to recover on their claims from Tennyson by way of post-confirmation plan modifications. *See* 11 U.S.C. § 1129. For example, if Tennyson's projected disposable income were to increase to a positive number in years four or five, § 1329 would allow unsecured creditors to file for a plan modification. However, if Tennyson obtained confirmation of a three-year plan, unsecured creditors would be deprived of an opportunity to collect on their unsecured claims since Tennyson's plan would have terminated prior to year four. The Congressional intent to make sure that debtors repay creditors up to their maximum ability would be contravened by permitting confirmation of a bankruptcy plan for less than five years when unsecured claims have not been paid in full.

*Id.* While *Tennyson* was not decided in the context of plan modification, the Eleventh Circuit clearly stated that the Congressional intent behind BAPCPA was to require above-median income debtors to remain in their plans for five years.

The current case involves above-median income Debtors with a confirmed Plan that includes a five-year ACP. Subsequent to confirmation of that Plan, Debtors experi-

enced a substantial change in circumstances that makes it impossible for them to continue to pay the $340 per month as required under their Plan. This fact is not contested. Debtors seek to modify their Plan under the terms of 11 U.S.C. § 1329. Section 1329 governs modification and provides in relevant part:

§ 1329. Modification of Plan after confirmation

(a) At anytime after confirmation of the plan, but before the completion of payment under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payment on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

. . .

(b)(1) Sections 1322(a), 1322(b) and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(C) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

The Trustee contends that § 1329 does not permit a debtor to shorten a plan term to less than the ACP of § 1325(b), unless full payment to unsecured creditors is provided. The Trustee relies upon the Elev-

enth Circuit decision in *Tennyson* and its review of the language of § 1325. Additionally, the Trustee notes that the Supreme Court's recently decided case, *Hamilton v. Lanning*, —— U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010), allowed for a more "flexible approach" to determine a debtor's projected disposable income to fund a Chapter 13 plan. *Id.* at 2478. The Debtor in *Lanning* was an above-median income debtor based upon the calculation of current monthly income under 11 U.S.C. § 101(10A). *Id.* at 2470. However, debtor's actual income in that case at the time of plan confirmation was below-median. *Id.* Despite that fact, the bankruptcy court required the debtor's plan to have a duration of sixty months— her ACP. *Id.* at 2470–71. The Supreme Court held that debtor's payments under the plan could reflect her actual income. *Id.* at 2478. Yet there was no suggestion that the adoption of a more forward-looking interpretation of projected disposable income would allow a debtor to change his or her ACP under the statute. *Id.*

The Eleventh Circuit in *Tennyson* also relied on *Lanning's* rationale to support its holding that the provisions of Title 11 setting out the ACP require an above-median income debtor to remain in a Chapter 13 bankruptcy for a minimum of five years. *In re Tennyson*, 611 F.3d at 878. The Circuit Court reasoned that "*Lanning* does not directly comment on the definition of 'applicable commitment period' but what it does indicate is that § 1325(b) is not a strict mechanical formula existing in a vacuum." *Id.* With such a

flexible approach, the Eleventh Circuit concluded that "[i]n order for 'applicable commitment period' to have any definite meaning, its definition must be that of a temporal term derived from § 1325(b)(4) and independent of § 1325(b)(1)." *Id.* at 879.

## C. Section 1329 plan modifications include applicable commitment period requirements

Debtors argue and the Trustee acknowledges that a number of bankruptcy court cases, some decided pre-BAPCPA, have allowed debtors to modify confirmed Chapter 13 plans without consideration of the disposable income test of § 1325(b)(1)(B). *E.g., In re Ewers*, 366 B.R. 139 (Bankr.D.Nev.2007); *In re Ireland*, 366 B.R. 27 (Bankr.W.D.Ark.2007). Likewise, parties acknowledge that an almost equal number of cases hold otherwise. *E.g., In re Keller*, 329 B.R. 697 (Bankr.E.D.Cal.2005); *In re Slusher*, 359 B.R. 290 (Bankr.D.Nev.2007). To a large degree, these cases turn on a court's decision as to whether § 1325(b)(1)(B)[3] has been incorporated into section 1329(b)(1).

The issue of statutory interpretation with respect to many provisions of BAPCPA is challenging because, while the stated intent of the statute is that debtors who can pay all or a portion of their unsecured debts should do so,[4] the statutory language is frequently susceptible of more than one "plain meaning." The imperfect drafting of BAPCPA has lead to divergent analysis with each camp citing "plain meaning" in support of its ultimate determination. To

---

**3.** Section 1325(b)(1)(B) provides that "If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—(B) the plan provides that all of the debtor's projected disposable income ... in the applicable commitment period ... will be applied...."

**4.** "The heart of [BAPCPA's] consumer bankruptcy reforms ... is intended to ensure that debtors repay creditors the maximum they can afford." H.R. REP. 109–31(I), P.2, 2005 U.S.C.C.A.N. 88, 89.

see this problem, one need look no further than the issue before the Court. Some courts have ruled that the statutory text of § 1329 does not incorporate § 1325(b), *In re Hill,* 386 B.R. 670, 675–6 (Bankr. S.D.Ohio 2008), while others have ruled that § 1329 incorporates both §§ 1325(a) and 1325(b). *See In re King,* 439 B.R. 129 (Bankr.S.D.Ill.2010).

Since the enactment of BAPCPA, a number of bankruptcy courts have followed pre-BAPCPA cases and held that the disposable income test of 1325(b)(1)(B) is not applicable to a modification and, therefore, a debtor may shorten the ACP for his case. *See, e.g., In re Ewers,* 366 B.R. 139 (Bankr.D.Nev.2007); *In re McCully,* 398 B.R. 590 (Bankr.N.D.Ohio 2008); *In re Hill,* 386 B.R. 670 (Bankr. S.D.Ohio 2008); *In re Howell,* 2007 WL 4124476 (Bankr.W.D.La.2007). These cases follow the reasoning of the pre-BAPCPA cases and rely heavily on statutory interpretation. Like the pre-BAPCPA cases, the absence of an explicit incorporation of § 1325(b)(1)(B) into § 1329 is considered determinative. Under this interpretation, the direct and unambiguous incorporation of §§ 1322(a) and 1322(b) suggest that Congress did not intend for § 1325(b)(1)(B) to apply to modifications. This position also states that to hold to the contrary makes § 1329(a)(2) superfluous.

It is noteworthy that none of these cases was decided after the Supreme Court's decision in *Hamilton v. Lanning,* —— U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) and none was decided in a Court bound by the decision in *In re Tennyson,* 611 F.3d 873 (11th Cir.2010).

Admittedly, § 1325(b), which includes the disposable income test, is not directly referenced in § 1329. Section 1329(b)(1) requires that post-confirmation modifications comply with §§ 1322(a), 1322(b), 1323(c) and 1325(a). And § 1329(a)(2) allows a post-confirmation modification to extend or reduce the time for payments under the plan. Nonetheless, there is a compelling textual basis to incorporate § 1325(b) into plan modifications when the provisions are examined in total. In fact, the language of § 1325(a) plainly states: "Except as provided in subsection (b), the Court shall confirm a plan if ..." While it might have been clearer if Congress had explicitly listed § 1325(b) or had referenced the requirements of § 1325 generally, this clause in § 1325(a) does, in fact, include subsection (b). Read together, the best efforts test of § 1325(b) is incorporated into § 1329 plan modifications when there is an objection by a trustee or holder of an allowed unsecured claim. These are the same circumstances under which the best efforts test applies at plan confirmation. At least one post-BAPCPA case has found this to be an implicit incorporation of the disposable income test. *In re King,* 439 B.R. 129, 2010 WL 4180625 (Bankr. S.D.Ill. Oct.20, 2010). This is consistent with what other courts had decided pre-BAPCPA. E.g., *In re Keller,* 329 B.R. 697 (Bankr.E.D.Cal.2005).

Additionally, § 1329 does include an explicit reference to § 1325(b)(1)(B). As noted by the Court in the *King* case, reference to § 1325(b) does appear in § 1329(c) in delineating the limits on plan duration that a court can allow in a modification. *In re King,* 2010 WL 4180625, at *11. This provides further statutory support to the position that § 1325(b) has relevance to a modification. Finally, § 1325(a)(1) requires that a modification comply with the provision of "this chapter and with the other applicable provisions of this title." Section 1325(b) is one of the provisions of Chapter 13.

This statutory interpretation does not, as Debtors suggest, render § 1329(a)(2) superfluous. While it does mean that an

above-median income debtor cannot reduce her ACP, § 1329(a)(2) has applicability to many below-median income debtors who propose plans that exceed their thirty-six month ACP and then seek to extend or reduce the plan's duration. The sixty-month maximum is not a new concept under BAPCPA. It has always been true that debtors could not propose plans or modifications to exceed sixty months. Therefore, a debtor's ability to extend a sixty-month plan under § 1329(a)(2) has always had limited applicability. BAPCPA's addition of the ACP only further restricts the ability of above-median income debtors to reduce the duration of their plan under § 1329(a)(2). A statute is not superfluous based on its inapplicability to one subset of debtors. The statutory text, with the overlay of *Tennyson's* temporal ACP holding, leads the Court to find that § 1329 plan modifications are subject to the requirements of § 1325(a) and (b).

## D. Conclusion

■ This Court is bound by the Eleventh Circuit ruling in *Tennyson* with respect to the interpretation of applicable commitment period. In addition to the statutory interpretation, *Tennyson's* underlying rationale in ruling that ACP is a temporal concept was that above-median income debtors must remain in their Chapter 13 plans for a sixty month time period to allow creditors to have the benefit of upward changes in income. *In re Tennyson,* 611 F.3d at 879. This reasoning would be completely undermined if Debtors were allowed to modify their plans to shorten that period. Even where, as in

the case of these Debtors, no funds are available on a monthly basis for payment to the Trustee, Debtors could propose a modified plan with monthly payments of zero dollars to the Trustee. If neither the Trustee nor a creditor propose a further modification to the Plan during the remaining portion of the ACP, Debtors will have completed their payments under the Plan and will be eligible for a Chapter 13 discharge at the conclusion of their original ACP, assuming all other requirements for discharge set out in § 1328 have been met.

This case is unusual in that Debtors have made the payments required by their plan for a period of forty months and they seek to reduce their ACP to thirty-six months. At the same time, Debtors acknowledge that they could have sought a discharge under § 1328(b), the so-called "hardship discharge." [5] Of course, the hardship discharge is more limited than the general § 1328(a) discharge,[6] but Debtors have not provided information with respect to any claims that would not be discharged in this case.

Upon consideration of *Tennyson's* temporal holding, *Lanning,* and the full text of §§ 1325 and 1329, this Court holds that § 1329 does not permit Debtors, as above-median income debtors, to reduce their ACP below 60 months. Accordingly, it is

**ORDERED** that Debtors' Post–Confirmation Modification of Chapter 13 Plan is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Trustee's Objection to Debtors' Modification is hereby **SUSTAINED.**

---

**5.** A prerequisite of a hardship discharge is that "modification of the plan under § 1329 is not practicable," and the case law would not appear to be adverse to the grant of a hard-

ship discharge under facts similar to this case.

**6.** *Compare* 11 U.S.C. § 1328(c).

This Order does not prevent Debtors from seeking a new proposed modification of their plan consistent with this Court's Order or seeking a hardship discharge under section 1328(b).

The Clerk is directed to serve a copy of this Order on Debtors, Debtors' counsel, the Chapter 13 Trustee, and all creditors.

**IT IS ORDERED.**