In re Charles Daniel McALLISTER
and Francis Diane McAllister,
Debtors.

No. 11–40606–PWB.

United States Bankruptcy Court,
N.D. Georgia,
Rome Division.

Signed April 3, 2014.

Michael D. Hurtt, The Hurtt Law Firm, LLC, Dalton, GA, for Debtors.

Vivieon E. Kelley, Office of the United States Trustee Atlanta, GA, for Donald F. Walton, United States Trustee.

Brandi L. Kirkland, Atlanta, GA, for Mary Ida Townson, Trustee.

## ORDER ON PROPOSED MODIFICATIONS OF PLANS

PAUL W. BONAPFEL, Bankruptcy Judge.

### I. INTRODUCTION AND STATEMENT OF ISSUES

Charles and Diane McAllister filed their joint chapter 13 case in February 2011. In April 2012, the Court confirmed their chapter 13 plan [27, 33] that does not provide for any payments to unsecured creditors. The McAllisters could have resolved their unsecured debts by filing under chapter 7, but they needed chapter 13 relief to deal with a mortgage on their residence and to pay secured and nondischargeable priority tax claims.

Mrs. McAllister died on March 2, 2013, about two years after the filing of their case. [49]. Mr. McAllister received $250,000 in life insurance proceeds that he

disclosed on an amendment to his schedules and claimed as exempt. [50].

In response to Mr. McAllister's unanticipated receipt of life insurance proceeds due to the untimely death of his wife, both Mr. McAllister and the Chapter 13 Trustee have proposed postconfirmation modifications to the chapter 13 plan under 11 U.S.C. § 1329. Each objects to the Court's approval of the other's modification.

Mr. McAllister's proposed modification, as amended, provides for an increase in monthly plan payments to accelerate the completion of payments under the plan and for a distribution of $15,000 to holders of unsecured claims from the life insurance proceeds. [59, 69]. The Trustee's modification proposes that $ 104,023.31 of the life insurance proceeds be paid to the Chapter 13 trustee to pay all allowed unsecured claims in full and the Trustee's statutory fee. Mr. McAllister's attorney is holding these funds in escrow pending further order. [67].

11 U.S.C. § 1329 governs postconfirmation modification of a chapter 13 plan. Section 1329 provides that, if a proposed modification meets its requirements, the plan *may* be modified.

■ Application of § 1329 thus involves a two-step process. The Court must first determine whether a proposed modification meets the mandatory requirements for confirmation that § 1329 prescribes. If it does, the Court must then exercise its discretion to determine whether to approve the modification.

Subsection (a) of § 1329 permits modification upon request of the debtor, the chapter 13 trustee, or the holder of an allowed unsecured claim for one of four purposes. Paragraph (a)(1) states the permissible purpose that applies here: "to increase or reduce the amount of pay-

ments on claims of a particular class of claims provided for by the plan." 11 U.S.C. § 1329(a)(1). Both modifications meet this requirement.

A modification must also comply with subsections (b) and (c) of § 1329. Paragraph (b)(1) states that the requirements of 11 U.S.C. §§ 1322(a), 1322(b), 1322(c), and 1325(a) apply to a modification. Paragraph (c) of § 1329 imposes limitations on the length of the modified plan.

Neither modification raises any issues with regard to compliance with the three subsections of § 1322 that state mandatory and permissive provisions of a plan or with § 1329(c)'s limits on the length of the modified plan. The modifications do, however, require consideration of whether they met the confirmation requirements of § 1325(a).

The confirmation requirements applicable here are the so-called "best interest of creditors test" of § 1325(a)(4), the good faith requirement of § 1325(a)(3), and the requirement of § 1325(a)(1) that a plan comply with the provisions of chapter 13 and other applicable provisions of the Bankruptcy Code. The Trustee contends that the projected disposable income test of § 1325(b) also applies to a modification. Although the modification provision in § 1329(b) does not list § 1325(b) as one of the confirmation requirements applicable to a modification, the Trustee asserts that it applies under § 1325(a)(1), which § 1329(b) does list.

The parties raise several questions that underlie their positions concerning application of the confirmation requirements to the competing modifications: (1) whether the life insurance proceeds are property of the estate; (2) whether Mr. McAllister can exempt them if they are; (3) whether the proceeds are "disposable income"; and (4) whether a modification may require the

use of the proceeds to pay creditors even if they are proceeds from property that is not property of the estate or is exempt.

Mr. McAllister asserts that the life insurance proceeds are not property of the estate under 11 U.S.C. § 541(a)(5) because he became entitled to them more than 180 days after the filing of his petition. Alternatively, he contends that he is entitled to exempt the life insurance proceeds under O.C.G.A. § 44–13–100(a)(11)(C), which permits the exemption of life insurance proceeds arising from the death of a person on whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The Trustee contends that any property a debtor receives after confirmation is property of the estate under 11 U.S.C. § 1306(a) and that the limitation in § 541(a)(5) that excludes life insurance proceeds to which a debtor becomes entitled more than 180 days after the filing of the case does not apply. The Trustee opposes Mr. McAllister's exemption of the proceeds on the ground that Mr. McAllister was not a dependent of his wife. Even if the proceeds are non-estate or exempt property, the Trustee continues, the proceeds are disposable income that Mr. McAllister must commit to the payment of his creditors.

Based on her position that the proceeds are non-exempt property of the estate, the Trustee opposes Mr. McAllister's modification on the ground that it does not comply with the best interest of creditors test of § 1325(a)(4). Her alternative position is that the proceeds are in any event disposable income and that Mr. McAllister's modification does not meet the projected disposable income test of § 1325(b).[1] The Trustee also contends that Mr. McAllister has not proposed his modification in good faith as 11 § 1325(a)(3) requires because it does not provide for payment of claims in full when the proceeds give him enough money to do so.

The Trustee asserts that her modification meets these requirements and that § 1329 permits postconfirmation modification of a plan in accordance with a debtor's ability to pay creditors, which the availability of the insurance proceeds establishes. Consideration of the Trustee's position involves questions of whether the proceeds are disposable income, whether the projected disposable income test of 11 U.S.C. § 1325(b) applies to a postconfirmation modification, and whether, if it does not, a modification may nevertheless require a debtor to pay creditors in accordance with her ability to pay.

Mr. McAllister objects to the Trustee's modification. His primary argument relies on the premise that the proceeds are not property of the estate or are exempt. Based on this premise, he concludes that the Trustee's modification does not meet the requirements of § 1325(a)(1) because it violates provisions of the Bankruptcy Code that exclude non-estate or exempt property from administration in a bankruptcy case. Alternatively, even if the Trustee prevails on these issues, Mr. McAllister asks the Court in the exercise of its discretion to deny approval of the Trustee's modification in the circumstances of this

---

1. Mr. McAllister's modification appears to contemplate the early pay-off of his plan. The projected disposable income test of § 1325(b) requires payment of projected disposable income to unsecured creditors for the applicable commitment period. Because at this point Mr. McAllister's original three-year ap- plicable commitment period has expired, the dispute here does not involve the question of whether a modification may reduce a debtor's applicable commitment period. *See, e.g., In re Buck,* 443 B.R. 463 (Bankr.N.D.Ga.2010). The parties have not raised this issue.

case, based primarily on his need to use the proceeds for the current and future support of himself and his family.

Although the case thus involves a number of issues, the Court must answer three general questions:

1. Whether Mr. McAllister's modification meets the requirements of § 1329;

2. Whether the Trustee's modification meets the requirements of § 1329; and

3. Whether, in the exercise of its discretion, the Court should approve either modification if it meets the requirements of § 1329. If both modifications comply with § 1329, the Court must determine which one to approve.

Part II summarizes the Court's conclusions that it will approve Mr. McAllister's modification and deny approval of the Trustee's. Parts III and IV explain, respectively, why the Court approves Mr. McAllister's modification and does not approve the Trustee's.

## II. SUMMARY

For reasons set forth below, the Court approves Mr. McAllister's modification and denies approval of the Trustee's modification.

*Mr. McAllister's modification*

Part III discusses whether Mr. McAllister's modification meets the best interest of creditors test of 11 U.S.C. § 1325(a)(4), the projected disposable income test of 11 U.S.C. § 1325(b), and the good faith test of 11 U.S.C. § 1325(a)(3).

With regard to the best interest of creditors test of § 1325(a)(4), the life insurance proceeds would not be available for distribution to creditors in a hypothetical liquidation in a chapter 7 case, even if the proceeds are property of the estate and are not exempt. The reason is that, if conversion to chapter 7 now occurred, 11

U.S.C. § 348(f) provides that property of the estate in the converted case includes only property that the debtor had at the time of the original filing of the petition. (Subpart III(A)).

Even if the projected disposable income test of 11 U.S.C. § 1325(b) applies to a modification, the life insurance proceeds cannot be disposable income under the statutory definition of the term. Section 1325(b)(2) defines "disposable income" as "current monthly income," less certain exclusions and deductions for permissible expenditures. Section 101(10A) defines "current monthly income" as the monthly average of all of the income a debtor receives during a six-month period before the filing of the case. Because Mr. McAllister did not receive the proceeds in that period, they cannot be "current monthly income," they cannot be disposable income, and the projected disposable income test does not require that he use enough proceeds to pay claims in full. (Subpart III(B)).

Section 1325(a)(3) requires that a plan be proposed in good faith. The Court concludes that Mr. McAllister's proposed modification to pay creditors more than they would receive under the existing plan has been proposed in good faith. (Subpart III(C)).

The only reason for the Court to exercise its discretion to deny approval of Mr. McAllister's modification is the Trustee's modification, which results in payment of claims in full. Consequently, the Court concludes that it should approve Mr. McAllister's modification, unless it can and should approve the Trustee's modification. (Subpart III(D)).

*The Trustee's modification*

Part IV addresses Mr. McAllister's objections to the Trustee's modification.

The Court first concludes that the life insurance proceeds are not property of the estate under 11 U.S.C. § 541(a)(5), which controls over 11 U.S.C. § 1306(a). It is, therefore, not necessary to determine whether Mr. McAllister could exempt them. (Subpart IV(A)).

The Court then considers whether a postconfirmation modification under § 1329 may require the use of the proceeds to pay creditors, even though they are excluded from the estate. Under one analysis of § 1329, a modification may require a debtor to increase payments to creditors based on her ability to pay, regardless of whether the source of funds to make the payments is property that is excluded from property of the estate. The Court concludes, however, that rulings of the Eleventh Circuit,[2] do not permit a modification to require a chapter 13 debtor to use excluded property to pay claims of creditors. The Trustee's modification, therefore, violates 11 U.S.C. § 1325(a)(1) because it does not comply with the Bankruptcy Code. (Subpart IV(B)).

Alternatively, to the extent that either of the foregoing rulings is erroneous, the Court concludes that, in the exercise of its discretion, it should not approve the Trustee's modification because Mr. McAllister needs the life insurance proceeds for the current and future support of himself and his family. (Subpart IV(C)).

*Conclusion*

The Court will approve Mr. McAllister's proposed modification and deny approval of the Trustee's modification. (Part V).

## III. MR. MCALLISTER'S PROPOSED MODIFICATION

Mr. McAllister's proposed modification commits only a portion of the life insurance proceeds to the payment of unsecured creditors. In view of the fact that the insurance proceeds are sufficient to permit the payment of all claims in full, the questions are whether the failure of Mr. McAllister modification to do so violates either the best interest of creditors test of § 1325(a)(4), the projected disposable income test of § 1325(b), or the good faith requirement of § 1325(a)(3). If his modification does not contravene any of these requirements, the Court must then decide whether to approve it.

### A. The best interest of creditors test— § 1325(a)(4)

■ Section 1325(a)(4) states the so-called "best interest of creditors" test for confirmation of a plan. It requires that the plan provide that each unsecured creditor receive distributions that are not less than "the value, as of the effective date of the plan" of the amount that the creditor would receive if "the estate of the debtor were liquidated under chapter 7 ... on such date." 11 U.S.C. § 1325(a)(4). A modification must pass this test under § 1329(b).

In the modification context when a debtor has received a postpetition inheritance or life insurance proceeds, courts and litigants usually ask three questions to determine whether a modification meets the best interest test.

---

**2.** *Gamble v. Brown (In re Gamble)*, 168 F.3d 442 (11th Cir.1999); *Thomas v. Walden (In re Walden)*, 44 Fed.Appx. 946 (11th Cir.2002) (unpublished).

*Thomas v. Walden* was an appeal from the Northern District of Georgia. A copy of the Eleventh Circuit's opinion in *Walden* is in this

Court's record at Docket No. 47 in the case of Betty C. Walden, Case No. 99–12191. The Court has directed that copies of selected documents from Ms. Walden's case be filed in this case [Docket No. 72], including the Eleventh Circuit's unpublished opinion at page 42.

The first two are whether the postpetition asset is property of the estate and, if so, whether it is exempt. If property is not property of the estate or is exempt, it is not included in the calculation of what creditors would receive in a hypothetical chapter 7 liquidation.

The third question is whether the "effective date" for purposes of applying the test is the date of the modification or an earlier date, either the filing of the petition or original confirmation of the plan. If one of the earlier dates is the "effective date," the postpetition property is likewise excluded because the debtor did not have it at the earlier time. If the modification date applies, the assumption is that the best interest test requires that the modification must provide for payment to unsecured creditors of what they would receive based on the inclusion in the estate of the value of the property the debtor acquired after confirmation.

Courts have divided on these questions,[3] but it is not necessary to answer either of them. The hypothetical liquidation of the estate in this case would occur upon its conversion from chapter 13 to chapter 7. To apply the best interest of creditors test, it is necessary to determine what the contents of the estate would be if this chapter 13 case were converted to chapter 7.

■ 11 U.S.C. § 348(f) defines property of the estate when a case is converted from chapter 13 to chapter 7. The general rule of § 348(f) is that, upon conversion of a case from chapter 13 to chapter 7, property of the estate in the chapter 7 case consists of property of the estate "as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A). If the debtor converts the case in bad faith, property of the estate in the converted case is property of the estate as of the date of conversion under § 348(f)(2).[4]

Under the general rule of § 348(f)(1)(A), the estate in a hypothetical chapter 7 liquidation that occurs at the time of modification of a chapter 13 plan cannot include any asset that the debtor acquired after the filing of the case. Property that the debtor acquires after confirmation is property of the estate *only* if the *debtor* converts the case in bad faith. Nothing in the statute permits a court to assume a bad faith conversion in the modification context, so the general rule must apply. Moreover, because the entire idea behind the best interest test is to compare what unsecured creditors receive under the plan with what they would get in a chapter 7 case, it is appropriate to consider what creditors would receive if they pursue the alternative course of conversion. Under that view, the bad faith exception cannot apply because the debtor is not seeking conversion of the case.

So it does not matter whether the life insurance proceeds are nonexempt property of the estate or when the best interest of creditors calculation under § 1325(a)(4) occurs. The result under § 348(f) is the same: the proceeds are not property of the estate in the converted case. Because Mr. McAllister has no other nonexempt assets, administration of his hypothetical chapter 7 estate will not result in unsecured creditors receiving anything. Consequently, Mr. McAllister's modification that proposes to pay a total of $15,000 to

**3.** *See* W. Homer Drake, Jr., et al., Chapter 13 Practice and Procedure § 11B:9 (2013–2 ed.).

**4.** *See Mullican v. Moser (In re Mullican)*, 417 B.R. 408 (E.D.Tex.2009); *In re Smith*, 2012 WL 43647 (Bankr.N.D.Ohio 2012); *Davis v. Weddington (In re Weddington)*, 457 B.R. 102 (Bankr.D.Kan.2011).

them meets the best interest of creditors requirement of § 1325(a)(4).

## B. The projected disposable income test—§ 1325(b)

■ The next issue is whether the projected disposable income test of 11 U.S.C. § 1325(b) requires Mr. McAllister's modification to commit enough of the life insurance proceeds to pay all of the claims in full.

At the time of confirmation, the projected disposable income test requires that a plan provide for a debtor to commit all of her disposable income during the "applicable commitment period" to the payment of unsecured creditors,[5] unless the plan provides for the payment of the allowed amount of all unsecured claims,[6] if the trustee or the holder of an unsecured claim objects. 11 U.S.C. § 1325(b)(1). For a below-median debtor like Mr. McAllister, the applicable commitment period is three years. 11 U.S.C. § 1325(b)(4)(A).

Section 1325(b)(2) defines "disposable income" as "current monthly income" received by the debtor, less certain exclusions, less amounts "reasonably necessary to be expended" for specified purposes, including the maintenance or support of the debtor or a dependent of the debtor. "Current monthly income" is determined by reference to "the average monthly income from all sources that the debtor receives ..., derived during the 6–month period" preceding the filing of the petition. 11 U.S.C. § 101(10A).

Section 1329(b)(1) specifies that the requirements of § 1325(a) apply to a modification but does not state that § 1325(b) applies.[7] Courts disagree as to whether the projected disposable income test applies in the context of a postconfirmation modification under § 1329.[8] One view is that the omission of § 1329(b) from the list of applicable sections means that the projected disposable income test is not applicable to a modification.[9] The opposite interpretation is that § 1329(b) applies because § 1325(a)(1)'s requirement that a plan comply with the provisions of chapter 13—which does apply to a modification—

---

5. 11 U.S.C. § 1325(b)(1)(B).

6. 11 U.S.C. § 1325(b)(1)(A).

7. As later text at pages 20–24 discusses, Chapter 13 as originally enacted did not contain a projected disposable income test, and the modification statute, § 1329, did not contemplate modification by a party other than the debtor. When Congress added the projected disposable income test in the Bankruptcy Amendments and Federal Judgeship Act of 1984, and when it revised the test in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, it did not make any substantive changes to § 1329 with regard to the standards applicable to approval of a modification other than the term of the plan.

8. *See generally* W. Homer Drake, Jr., et al., CHAPTER 13 PRACTICE AND PROCEDURE § 11B:12 (2013–2 ed.).

9. *E.g., In re Mattson*, 468 B.R. 361, 370 (9th Cir. BAP 2012); *In re Sunahara*, 326 B.R. 768

(9th Cir. BAP 2005); *In re Forbes*, 215 B.R. 183, 191 (8th Cir. BAP 1997); *In re Maxwell*, 2013 WL 6000455 (Bankr.E.D.Cal.2013); *In re Salpietro*, 492 B.R. 630 (Bankr.E.D.N.Y. 2013); *In re Tibbs*, 478 B.R. 458 (Bankr. S.D.Fla.2012); In re *Coay*, 2012 WL 2319100 (Bankr.C.D.Ill.2012); *In re Grutsch*, 453 B.R. 420 (Bankr.D.Kan.2011); *In re Hall*, 442 B.R. 754 (Bankr.D.Idaho 2010); *In re Davis*, 439 B.R. 863 (Bankr.N.D.Ill.2010); *In re Kearney*, 439 B.R. 694 (Bankr.E.D.Wis.2010); *In re McCully*, 398 B.R. 590 (Bankr.N.D.Ohio 2008) (collecting cases and stating that the majority rule is that the projected disposable income test does not apply to modification); *In re Hill*, 386 B.R. 670 (Bankr.S.D.Ohio 2008) (post-BAPCPA); *In re Wetzel*, 381 B.R. 247, 251–52 (Bankr.E.D.Wis.2008) (pre-BAPCPA); *In re Forte*, 341 B.R. 859, 864 (Bankr.N.D.Ill.2005); *In re Golek*, 308 B.R. 332 (Bankr.N.D.Ill.2004); *In re Sounakhene*, 249 B.R. 801 (Bankr.S.D.Cal.2000).

necessarily incorporates the requirements of the projected disposable income test of § 1325(b).[10]

This statutory interpretation debate is interesting but not dispositive. It had more relevance prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which changed the operation of the projected disposable income test and, among other things, tied its definition to a new statutory definition of "current monthly income."

Prior to BAPCPA, the statute defined "disposable income" simply as "income which is received by the debtor and which is not reasonably necessary to be expended" for specified purposes, including the maintenance and support of the debtor and her dependents.[11] A debtor's receipt of a postconfirmation asset could be determined to be "disposable income" within this statutory definition.

After BAPCPA, however, a debtor's receipt of a postconfirmation asset cannot possibly be "disposable income" under its statutory definition because the debtor did not receive it during the six months preceding the filing of the petition. Accordingly, Mr. McAllister's modification does not run afoul of the projected disposable income test, and its failure to commit enough of the life insurance proceeds to pay claims in full does not violate the projected disposable income test even if it applies to his modification.[12]

Moreover, the denial of approval of Mr. McAllister's modification based on its failure to meet the projected disposable income test could be a Pyrrhic victory for unsecured creditors. If the Court denies approval of his modification, his original plan that pays nothing to unsecured creditors remains in place, unless the Court approves the Trustee's modification. But how much a debtor can be required to pay under a trustee's or unsecured creditor's modification to increase payments is a dif-

10. *E.g.*, *In re Cormier*, 478 B.R. 88 (Bankr. D.Mass.2012); *In re Stretcher*, 466 B.R. 891 (Bankr.W.D.Tex.2011); *In re Heideker*, 455 B.R. 263 (Bankr.M.D.Fla.2011); *In re Buck*, 443 B.R. 463 (Bankr.N.D.Ga.2010); *In re King*, 439 B.R. 129 (Bankr.S.D.Ill.2010); *In re Braune*, 385 B.R. 167 (Bankr.N.D.Tex. 2008); *In re Heyward*, 386 B.R. 919 (Bankr. S.D.Ga.2008); *In re Baxter*, 374 B.R. 292, 295–96 (Bankr.M.D.Ala.2007); *In re Keller*, 329 B.R. 697, 701–02 (Bankr.E.D.Cal.2005); *In re Nahat*, 315 B.R. 368 (Bankr.N.D.Tex. 2004); *In re Martin*, 232 B.R. 29 (Bankr. D.Mass.1999); *In re McKinney*, 191 B.R. 866 (Bankr.D.Or.1996); *In re Klus*, 173 B.R. 51 (Bankr.D.Conn.1994); *In re Solis*, 172 B.R. 530 (Bankr.S.D.N.Y.1994); *In re Powers*, 140 B.R. 476 (Bankr.N.D.Ill.1992).

11. Former 11 U.S.C. § 1325(b)(2) provided:

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
(a) for the maintenance or support of the debtor or a dependent of the debtor, in-

cluding charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as that therm is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and
(b) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

12. Some courts have applied the projected disposable income test to a modification by interpreting the statute to permit determination of projected disposable income by reference to the debtor's income at the time of the modification. *E.g.*, *In re Ducret*, 2011 WL 2621329 (Bankr.S.D.Fla.2011), *rev'd* 2012 WL 4468376 (S.D.Fla.2012); *In re Self*, 2009 WL 2969489 (Bankr.D.Kan.2009). The Court cannot reach this result under the statutory definitions of disposable income and current monthly income.

ferent question—discussed below in Subpart IV(B)—than whether a debtor's modification proposes enough of an increase to unsecured creditors.

## C. Good faith—§ 1325(a)(3)

 Section 1325(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." Section 1329(b) makes this requirement applicable to a modification.

Mr. McAllister's decision to voluntarily use some but not all of the life insurance proceeds to pay claims when nothing in the statute requires him to do so cannot show an absence of good faith. Even if it did, the absence of good faith would result in denial of the proposed modification, which would leave the original plan in place, unless the Court approves the Trustee's modification.

The Court has no authority to rewrite Mr. McAllister's modification to require that he commit more of the proceeds to pay unsecured claims. Surely the proposal to pay more to unsecured creditors than the confirmed plan currently requires does not demonstrate an absence of good faith. Indeed, his proposal to pay almost 15 percent of the unsecured claims instead of nothing affirmatively demonstrates the existence of good faith on his part.

The existence of the Trustee's proposed modification that pays unsecured claims in full is immaterial to Mr. McAllister's good faith with regard to his modification. Whether the Court can or should approve the Trustee's modification raises different questions, which the Court discusses below. If the Court cannot or should not approve the Trustee's' modification, Mr.

McAllister's proposed modification is clearly more advantageous to creditors than refusing to approve his modification.

## D. Exercise of Discretion

Mr. McAllister's modification meets all other requirements that § 1329 imposes, none of which is in controversy. The only basis for the Court to exercise its discretion to deny approval of his modification is the existence of the Trustee's modification that pays creditors in full. The Court thus turns to consideration of the Trustee's modification.

## IV. THE TRUSTEE'S MODIFICATION

The Trustee's modification provides for the use of $ 104,023.31 of the life insurance proceeds to pay unsecured claims in full. Mr. McAllister objects to the modification on the ground that a modified plan cannot compel the use of a postconfirmation asset to pay claims if the asset is not property of the estate or is exempt. The statutory basis of his objection is 11 U.S.C. § 1325(a)(1). As applicable to a modification under 11 U.S.C. § 1329(b), § 1325(a)(1) requires that a modification comply with the provisions of chapter 13 and other applicable provisions of the Bankruptcy Code.

The premise of Mr. McAllister's objection is that the life insurance proceeds are not property of the estate under 11 U.S.C. § 541(a)(5) or are exempt under O.C.G.A. § 44–13–100(a)(11)(C).[13] The Trustee contends that the proceeds are property of the estate under 11 U.S.C. § 1306(a)(1) and that Mr. McAllister cannot exempt them because he was not a dependent of his wife as the exemption statute requires.

---

**13.** O.C.G.A. § 44–13–100(a)(11)(C) provides that a debtor may exempt a right to receive, or property that is traceable to, "a payment under a life insurance contract that insured the life of an individual of whom the debtor

was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

The Trustee asserts alternatively that, even if the proceeds are excluded from the estate, a modification may require the debtor to use them to pay unsecured debts. Subparts A and B of this part discuss these two issues.

Mr. McAllister also contends that, even if it is permissible for the Trustee's modification to require the use of the life insurance proceeds to pay unsecured debts, the Court should in the exercise of its discretion deny approval of the Trustee's modification, primarily because he needs all of the proceeds for his current and future support. Subpart C discusses this issue.

## A. The life insurance proceeds as property of the estate

■ The property of the estate issue involves a conflict between 11 U.S.C. § 1306(a)(1) and 11 U.S.C. § 541(a)(5).

Section 1306(a) provides that property of the estate includes "all property of the kind specified in [§ 541] that the debtor acquires after commencement of the case...." The Eleventh Circuit has determined that § 1306(a)(1) includes, as property of the estate, property acquired after confirmation. *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir.2008). But § 541(a)(5)(C) provides that property of the estate does not include life insurance proceeds that a debtor acquires after the filing of her petition if she acquires, or becomes entitled to acquire them, more than 180 days after the filing of the petition, as Mr. McAllister did here.

Because § 541(a)(5)(C) does not include such proceeds as property of the estate and because § 1306(a)(1) includes only property that § 541 includes as property of the estate, Mr. McAllister argues, life insurance proceeds arising more than 180 days after commencement of a chapter 13 case are not property of the estate. The Chapter 13 Trustee argues that § 1306(a)(1) expands property of the estate in the chapter 13 context and includes all types of property specified in § 541 without regard to the limitations in § 541(a)(5).

Two bankruptcy judges in Georgia have carefully analyzed this issue and concluded that property of the estate under § 1306(a)(1) does not include property that § 541(a)(5) does not include. *In re Key*, 465 B.R. 709 (Bankr.S.D.Ga.2012); *In re Walsh*, 2011 WL 2621018 (Bankr.S.D.Ga. 2011).[14] These judges declined to follow the contrary view that other courts have adopted.[15] The Eleventh Circuit has not addressed the issue.

The Court agrees with the interpretative analyses and conclusions in *Key* and *Walsh* that the specific date restriction set forth in § 541(a)(5) controls and that § 1306(a)(1) does not eliminate that restriction. Accordingly, the Court concludes that the life insurance proceeds are not property of the estate.

Given the foregoing determination, the Court need not determine whether Mr. McAllister is a dependent for purposes of his ability to exempt the proceeds under O.C.G.A. § 44–13–100(a)(11)(C).[16] A debt-

---

**14.** *Accord, e.g., In re Schlottman*, 319 B.R. 23 (Bankr.M.D.Fla.2004).

**15.** *E.g., Carroll v. Logan (In re Carroll)*, 735 F.3d 147 (4th Cir.2013); *In re Vannordstrand*, 356 B.R. 788 (10th Cir. BAP 2007); *In re Tinney*, 2012 WL 2742457 (Bankr.N.D.Ala. 2012) (collecting cases); *In re Wetzel*, 381 B.R. 247, 254 (Bankr.E.D.Wisc.2008); *In re*

*Drew*, 325 B.R. 765, 770 (Bankr.N.D.Ill.2005); *In re Nott*, 269 B.R. 250 (Bankr.M.D.Fla. 2000); *In re Tworek*, 107 B.R. 666, 668 (Bankr.D.Neb.1989); *In re Euerle*, 70 B.R. 72 (Bankr.D.N.H.1987).

**16.** The Court finds as a fact that Mr. McAllister was not an actual dependent of his wife at the time of her death because she had no

or cannot exempt (and has no need to exempt) property that is not property of the estate.

## B. Whether a modification may require use of non-estate property

■ The Trustee asserts that, even if the life insurance proceeds are not property of the estate, a modification can require Mr. McAllister to use them to pay creditors. Section (1) of this subpart first examines the legal principles that authorize such a modification. Section (2) then considers whether those principles are consistent with the Eleventh Circuit's ruling in *Gamble v. Brown (In re Gamble)*, 168 F.3d 442 (11th Cir.1999), which held that exempt property is available for a chapter 13 debtor to use.

### 1. Whether a modification under § 1329 may require the use of non-estate or exempt property to pay creditors

The Trustee contends that proceeds that a debtor receives from the postconfirmation receipt of property may constitute "disposable income" that a modification under § 1329 may require a debtor to use to pay creditors even if the property is not property of the estate or is exempt. As Subpart III(B) explains, however, the proceeds cannot be "disposable income" within the statutory definition of the term in § 1325(b)(2), and the projected disposable income test provides no basis for requiring a debtor to commit them to pay creditors.

But this does not end the inquiry, because whether the proceeds are disposable income is not the proper question. The

issue, rather, is whether the modification statute, § 1329, permits a trustee or unsecured creditor to require the debtor to increase payments based on the receipt of money, regardless of whether its source is exempt or non-estate property. Consideration of this question requires an understanding of amendments to the Bankruptcy Code in 1984 that enacted the original disposable income test and that changed § 1329 to permit a chapter 13 trustee or unsecured creditor to seek a postconfirmation modification of the plan.

The following Subsection (a) explains why those amendments establish a debtor's ability to pay as the basis on which a trustee or unsecured creditor may seek an increase in payments through a postconfirmation modification and as the standard that sets the limit on what a modification may require the debtor to pay. Subsection (b) then examines the statutory basis for the conclusion that a modification may require a debtor to use proceeds from property acquired after confirmation even if it is not property of the estate or is exempt. In Section (2), however, the Court concludes that such analysis conflicts with applicable case law in the Eleventh Circuit.

### a. Debtor's ability to pay as the basis for an increase in payments through postconfirmation modification

As originally enacted by the Bankruptcy Reform Act of 1978, chapter 13 was fully voluntary. Only the debtor could seek relief under chapter 13,[17] and only the debtor could propose a plan[18] or its pre-

---

income. Thus, to prevail on this issue he would must win the argument that "dependent" under O.C.G.A. § 44–13–100(a)(11)(C) includes a spouse, regardless of actual dependency. Two bankruptcy judges in Georgia have rejected his interpretation. *In re Bright,*

2007 WL 7141820 (Bankr.N.D.Ga.2007); *In re Holt,* 357 B.R. 917 (Bankr.M.D.Ga.2006).

**17.** 11 U.S.C. § 303(a) permits the filing of an involuntary bankruptcy petition against a debtor only under chapters 7 and 11.

**18.** 11 U.S.C. § 1321.

confirmation modification.[19] Because only the debtor could file a plan, the modification statute contemplated that only the debtor could propose a postconfirmation modification of it.[20]

Because only the debtor could propose a postconfirmation modification, § 1329 necessarily established only *minimum* requirements that the modification must meet to protect the interests of unsecured creditors from an inappropriate downward adjustment in what they would receive. Section 1329 did not have to address the *maximum* that a debtor could be required to pay because the debtor obviously would not propose a modification that she did not want.

Further, the original chapter 13 did not contain a projected disposable income test. The only statutory requirement for confirmation that originally governed the amount that unsecured creditors must receive under a chapter 13 plan was the best interest test of § 1325(a)(4). When, as in many cases, a debtor has no nonexempt assets, the best interest test does not require the debtor to pay anything to unsecured creditors. Some courts nevertheless required a debtor to use her "best efforts" to pay unsecured creditors, concluding that the failure to do so demonstrated a lack of "good faith" that 11 U.S.C. § 1325(a)(3) requires for confirmation.[21] The courts of appeals rejected the "best efforts" requirement,[22] concluding instead that courts must evaluate a debtor's good faith under a "totality of the circumstances" test,[23] in which ability to pay is one of many factors.[24]

The Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") made two important changes to chapter 13. First, BAFJA enacted the original projected disposable income test in 11 U.S.C. § 1325(b) to provide an additional minimum requirement for payment of claims. Second, it amended 11 U.S.C. § 1329(a) to permit the chapter 13 trustee or the holder of an unsecured claim to propose a modification of the plan.

Although BAFJA changed the modification statute to permit trustees and unsecured creditors to propose a modification, it did not change the requirements in § 1329 for modification which, as just mentioned, established *minimum* standards that a *debtor* must meet. Section 1329 contains no guidelines for determining the *maximum* that a *trustee or unsecured creditor* might require a debtor to pay, other than the so-called "feasibility" standard of 11 U.S.C. § 1325(a)(6), which requires that the debtor will be able to make all payments under the plan and to comply with it. Furthermore, section 1329 does not expressly state any basis on which a

---

19. 11 U.S.C. § 1323.

20. *E.g., In re Tschiderer,* 73 B.R. 133, 134 (Bankr.W.D.N.Y.1987); *In re Boone,* 53 B.R. 78 (Bankr.E.D.Va.1985); *In re Fluharty,* 23 B.R. 426 (Bankr.N.D.Ohio 1982); *see In re Baldwin,* 97 B.R. 965, 966 (Bankr.N.D.Ind. 1989) (recognizing principle); *In re Gronski,* 86 B.R. 428, 430 (Bankr.E.D.Pa.1988) (same). *Contra, In re Koonce,* 54 B.R. 643 (Bankr. D.S.C.1985); *see In re Euerle,* 70 B.R. 72 (Bankr.D.N.H.1987) (Permitting trustee's modification without discussion of trustee's standing to modify plan).

21. W. Homer Drake, Jr., et al., CHAPTER 13 PRACTICE AND PROCEDURE § 9B:30 (2013–2 ed.).

22. *Id.*

23. *Id.* at § 9B:31.

24. *Id.* at § 9B:33. One view is that the enactment of the projected disposable income test in 11 U.S.C. § 1325(b) in 1984, as later text at page 23 discusses, as a specific statutory provision for how much a debtor must pay to unsecured creditors displaced ability to pay as part of the good faith analysis under 11 U.S.C. § 1325(a)(3). *See Id.*

trustee or unsecured creditor's modification can require a debtor to pay more to creditors.

The two confirmation tests in § 1325(a) that govern the amount the original plan must pay unsecured creditors—the best interest test of § 1325(a)(4) and the projected disposable income test of § 1325(b)—likewise provide no basis for determining whether and to what extent a modification may require a debtor to pay more to unsecured creditors than the originally confirmed plan provided. As Subpart III(A) explains, the best interest test in the modification context requires a calculation of what creditors would receive based on assets of the estate at the time of the filing of the petition. And the projected disposable income test of § 1325(b) calculates disposable income by reference to prepetition income. Postpetition changes in income or assets are, therefore, immaterial for purposes of both provisions in the modification context.

Section 1329 thus has no express statutory tests for determining when a trustee's or unsecured creditor's modification can require a debtor to pay more than the original plan and, if so, how much. An examination of the purpose and context of the BAFJA amendment of § 1329 in 1984 to permit trustees and unsecured creditors to seek postconfirmation modification reveals that the proper inquiry is the debtor's ability to pay.

In addition to permitting trustees and unsecured creditors to request a postcon-firmation modification of a chapter 13 plan, the BAFJA amendments made two other significant changes with regard to individual cases. One was the addition of the original projected disposable income test in § 1325(b). The other added § 707(b) to chapter 7 to permit the bankruptcy court to dismiss a chapter 7 petition if it was a "substantial abuse" of chapter 7.

Courts have recognized that all of these changes evidence a Congressional purpose that the bankruptcy laws require a debtor to pay creditors in accordance with her ability to do so.[25] The new projected disposable income test as enacted in 1984 conditioned confirmation of a chapter 13 plan on the debtor's commitment of all of her disposable income for three years to the payment of creditors. Permitting the court to dismiss a chapter 7 case for "substantial abuse" aimed to deny chapter 7 relief to debtors who had the ability to pay their debts. Expansion of the right to modify a plan to trustees and unsecured creditors gave them the ability to require a debtor to pay more than the confirmed plan required if she had the ability to do so.[26]

Thus, BAFJA established a debtor's ability to pay as a standard for confirmation through enactment of the projected disposable income test and, by permitting trustees and unsecured creditors to modify the plan, carried that standard forward through the case.[27]

The Bankruptcy Abuse Prevention and Consumer Practice Act of 2005 ("BAPC-

---

**25.** *E.g., Barbosa v. Solomon*, 235 F.3d 31, 40 & n. 15 (1st Cir.2000); *In re Storey*, 392 B.R. 266, 272–73 (6th Cir. BAP 2008); *In re Wetzel*, 381 B.R. 247, 251 (Bankr.E.D.Wisc.2008); *In re Trumbas*, 245 B.R. 764, 767 (Bankr. D.Mass.2000).

**26.** *See* Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Com-mittee on the Judiciary, 97th Cong., 1st and 2d Sess. 215, 221 (1981–82); Lawrence P. King, 5 COLLIER ON BANKRUPTCY ¶ 1329.01[b] at 1329–5 (15th ed. 1996).

**27.** *See* W. Homer Drake, Jr., et al., CHAPTER 13 PRACTICE AND PROCEDURE § 11B:14 (2013–2 ed.). *See also* Lawrence P. King, 5 COLLIER ON BANK-RUPTCY ¶ 1329.01[b] at 1329–5 (15th ed. 1996).

PA") amended the projected disposable income provisions of § 1325(b) and, among other things, changed the definition of "disposable income" to its current text, discussed above, that ties it to "current monthly income." BAPCPA also amended § 707(b) to provide for dismissal of a chapter 7 case for "abuse" (rather than "substantial" abuse) and to state objective standards for determining whether a presumption of abuse existed. BAPCPA did not make any amendments to § 1329 that are material to the issues here.[28]

It is clear that the purpose behind these BAPCPA changes was to strengthen enforcement of the ability to pay policy through more objective standards for determining ability to pay. BAPCPA thus did not alter the ability to pay standard that § 1329 necessarily contains.

So § 1329 permits a trustee or unsecured creditor to propose a postconfirmation modification that requires a debtor to pay more to creditors than the original plan based on the debtor's circumstances at the time of the proposed modification. The modification statute itself establishes the debtor's ability to pay as both the source of a trustee's or unsecured creditor's right to seek an increase in payments and the limitation on what a modification can require the debtor to pay. It is this standard, not the projected disposable income test of § 1325(b) or the best interest test of § 1325(a)(4), that governs.

The next question is whether the right to modify based on the ability to pay is restricted when the source of funding is property that is not property of the estate or is exempt. The next subsection considers this issue.

b. *Whether a trustee's or unsecured creditor's modification under § 1329 may require proceeds from non-estate property to pay unsecured creditors*

Section 1329 does not limit the sources of a debtor's ability to pay to increases in income or reductions in necessary expenditures or to the receipt of assets that are property of the estate. It states a general principle that a modification can require the debtor to increase payments based on the debtor's ability to do so without regard to how that is possible. Consequently, even though the projected disposable income test as a matter of statutory mandate provides no basis for requiring a debtor to pay more to unsecured creditors in a modification than the original plan provides, courts have concluded that its concepts properly inform the analysis of what such a modification may require.[29] Similarly, the debtor's postconfirmation receipt of an asset that is exempt or is not property of the estate changes the debtor's ability to pay, regardless of whether the best interest test statutorily requires its use to pay creditors.

Mr. McAllister contends, however, that a modification may not require a debtor to use proceeds derived from the receipt of a postconfirmation asset if it is not property of the estate or exempt.

Prior to the enactment of BAPCPA in 2005, most courts ruled that a debtor's receipt of money from exempt property could nevertheless be "disposable income" for purposes of the projected disposable

---

**28.** BAPCPA added an additional reason for modification and changed provisions relating to the term of the plan to "applicable commitment period."

**29.** *E.g., In re Sunahara,* 326 B.R. 768 (9th Cir. BAP 2005); *In re Than,* 215 B.R. 430 (9th Cir. BAP 1997); *In re Peebles,* 500 B.R. 270 (Bankr.S.D.Ga.2013); *In re Self,* 2009 WL 2969489 (Bankr.D.Kan.2009); *see* W. Homer Drake, Jr., et al., CHAPTER 13 PRACTICE AND PROCEDURE § 11B:12 (2013–2 ed.).

income test in connection with original confirmation[30] or a plan's modification.[31] These cases hold that the exemption of property does not preclude the inclusion of proceeds from it as part of the debtor's disposable income. Because the pre-BAPCPA projected disposable income test did not limit calculation of disposable income to income from nonexempt assets, the exempt status of property did not matter.

As the Court explained earlier,[32] BAPCPA changed the definition of "disposable income." Post–BAPCPA, proceeds from exempt assets received after the filing of the petition cannot be considered as "disposable income" within the revised BAPCPA definition. Nevertheless, the teaching of these cases is that the exempt nature of property does not preclude its consideration in determining what a chapter 13

debtor must pay. The principle is that the exemption of property from the estate is immaterial in the consideration of the application of other statutory concepts in chapter 13. In the modification context, the applicable statutory standard is the debtor's "ability to pay." Put another way, the principle is that a debtor may be required to use the proceeds of an exempt asset to pay creditors when another provision of chapter 13 requires or permits such use of the exempt proceeds.

In the modification context, the applicable statute is § 1329, the modification statute that authorizes an increase in payments to creditors based on the debtor's ability to pay without regard to the source of that ability. Under the principles of the pre-BAPCPA cases dealing with disposable income, the ability to pay standard of the modification statute permits a modifi-

---

**30.** *E.g., Stuart v. Koch (In re Koch),* 109 F.3d 1285, 1289 (8th Cir.1997) (postpetition worker's compensation payments exempt under state law); *Watters v. McRoberts,* 167 B.R. 146, 147–48 (S.D.Ill.1994) (personal injury settlement proceeds exempt under state law); *Hagel v. Drummond (In re Hagel),* 184 B.R. 793, 796–97 (9th Cir. BAP 1995) (social security benefits); *In re Springer,* 338 B.R. 515 (Bankr.N.D.Ga.2005) (personal injury settlement proceeds exempt under state law); *In re Launza,* 337 B.R. 286 (Bankr.N.D.Tex.2005) (personal injury settlement proceeds exempt under state law); *In re Pendleton,* 225 B.R. 425, 427–28 (Bankr.E.D.Ark.1998) (proceeds from settlement of personal injury claim is disposable income that debtor must pay into plan that provides for payment of all disposable income to the trustee, even if exempt); *see Gaertner v. Claude (In re Claude),* 206 B.R. 374, 380 (Bankr.W.D.Pa.1997) (proceeds from exempt personal injury claim settlement are exempt only to the extent that they are not disposable income); *cf. In re Rogers,* 168 B.R. 806 (Bankr.M.D.Ga.1993) (In ruling on whether chapter 7 case is "substantial abuse" under former 11 U.S.C. § 707(b), exempt military benefits are included in disposable income for purposes of analyzing what debtor could pay as disposable income in chapter 13

case). *See also In re Hall,* 442 B.R. 754 (Bankr.D.Idaho 2010) (in n post-BAPCPA case, concluding that projected disposable income test does not apply but that modification may require use of exempt lump-sum social security disability benefits to pay creditors). *Contra, e.g., In re Graham,* 258 B.R. 286 (Bankr.M.D.Fla.2001); *In re Tomasso,* 98 B.R. 513 (Bankr.S.D.Cal.1989).

Under BAPCPA, courts have ruled that social security benefits are exempt under federal law and are not included in the projected disposable income analysis. *E.g., Mort Ranta v. Gorman,* 721 F.3d 241 (4th Cir.2013); *In re Welsh,* 711 F.3d 1120 (9th Cir.2013); *In re Ragos,* 700 F.3d 220 (5th Cir.2012); *In re Cranmer,* 697 F.3d 1314 (10th Cir.2012).

**31.** *E.g., Freeman v. Schulman (In re Freeman),* 86 F.3d 478, 481 (6th Cir.1996) (tax refund exempt under state law); *see In re Baxter,* 374 B.R. 292 (Bankr.M.D.Ala.2007) (permitting trustee's modification in post-BAPCPA case based on debtor's receipt of postconfirmation property that was not property of the estate). *Contra, e.g., In re Graham,* 258 B.R. 286 (Bankr.M.D.Fla.2001).

**32.** Text *supra* at page 423–24.

cation to require the use of proceeds from an exempt asset to increase payments to unsecured creditors.

The BAPCPA amendments to the projected disposable income test do not affect this analysis of § 1329. The new definition of disposable income precludes consideration of postpetition receipt of proceeds from a prepetition exempt asset in the calculation of projected disposable income. But the BAPCPA amendments did not change either the fundamental rule of § 1329 that postconfirmation modification is permissible to increase payments based on the debtor's ability to pay or the principle in the pre-BAPCPA cases that a chapter 13 standard for determining the debtor's ability to pay may require the debtor to use proceeds from an exempt asset to pay claims in accordance with the debtor's ability to pay.

The same principle applies when the property is not property of the estate. Whether property that a debtor acquires postconfirmation[33] is excluded from the estate because the debtor exempts it or because it is not property of the estate makes no difference in the modification analysis because, in each situation, the excluded property is not subject to most prepetition debts.[34] The Court uses the term "excluded property" to include either non-estate or exempt property.

### c. Summary

In summary, the projected disposable income test of § 1325(b), even if applicable to a modification, provides no basis for requiring a debtor to use proceeds from excluded property to pay more to creditors than the original confirmed plan requires because the proceeds cannot be disposable income within the statutory definition.

**33.** It is important to distinguish between an asset that is exempt or is not property of the estate that exists at the time of original confirmation from an excluded asset that a debtor acquires after confirmation. The existence of the preconfirmation asset is taken into account through application of the best interest of creditors test. If property as of the petition date is not property of the estate or is exempt, the receipt of proceeds from the asset, even if realized after confirmation, provides no proper basis for modification of the plan.

**34.** The only difference is that, in some situations, property that is not property of the estate may be subject to some types of nondischargeable debts that cannot be enforced against exempt property.

If property is not property of the estate, it is not subject to administration in the bankruptcy case itself, just like exempt property. Some debts that are not enforceable against exempt property, however, are enforceable against non-estate property.

Exempt property is immune from all prepetition debts except nondischargeable taxes, domestic support obligations, debts secured by liens that are not avoidable, certain debts owed by an "institution-affiliated party" of an insured depository institution to a federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution, and debts in connection with fraud with regard to certain student loans. 11 U.S.C. § 522(c). With those exceptions, exempt property is not subject to prepetition debts even if the debtor does not receive a discharge or to any prepetition debts that are excepted from discharge.

No such immunity exists with regard to non-estate property, but the discharge injunction of § 524(c) protects it from debts that are discharged. Section 524(a)(2) provides that a debtor's discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged, prepetition] debt as a personal liability of the debtor." Unlike exempt property, therefore, non-estate property remains subject to any debts that are not discharged.

Nevertheless, the general rule is that non-estate property is not subject to prepetition debts. Accordingly, whether property is excluded from the estate because it is not property of the estate or is exempt, the effect on the debtor and creditors in almost all situations is the same: it is the debtor's to keep, free from liability for prepetition debts.

The standard for determining what a modification may require, rather, is the ability to pay standard that § 1329 necessarily imposes. The ability to pay standard requires consideration of a debtor's acquisition of postconfirmation property that materially changes the ability of the debtor to pay her debts. Section 1329 does not exclude proceeds from excluded property in determining ability to pay. Under the principle of the pre-BAPCPA cases discussed above, ability to pay is determined without regard to whether the source of that ability to pay is proceeds from property that is exempt or is not property of the estate.

The Court thus turns to the question of whether this principle conflicts with applicable rulings of the Eleventh Circuit.

*2. Whether Eleventh Circuit authority permits a modification to require the use of proceeds from non-estate or exempt property*

The premise of the analysis in Subsection IV(B)(1)(b) is the principle of the pre–BAPCPA cases that a debtor may be required to use proceeds from excluded property to pay unsecured claims. The Court must determine whether that principle is viable in view of the Eleventh Circuit's ruling in *Gamble v. Brown (In re Gamble)*, 168 F.3d 442 (11th Cir.1999).

In *Gamble,* the chapter 13 debtors sold exempt property and sought to retain the proceeds. The lower courts ruled that 11 U.S.C. § 522(c) required the chapter 13 trustee to hold the exempt proceeds pending the debtors' completion of their plan.

Section 522(c) states, "Unless the case is dismissed, property exempted under [§ 522] is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case." If dismissal occurred because the debtors did not complete their payments, the lower courts reasoned, the proceeds would not be exempt. Thus, until the debtors completed their payments, the asset must be preserved.

The Eleventh Circuit reversed. The court observed that 11 U.S.C. § 522(*l*) provides for the debtor to file a list of exempt property and states, "Unless a party in interest objects, the property claimed as exempt on such list is exempt." The court ruled, therefore, that, in the absence of a timely objection, "the exempt property is no longer part of the bankruptcy estate, and is available for the debtor's use." 168 F.3d at 444. The court noted that, under § 522(c), exempt property "is not liable during or after the case for any debt," with certain exceptions not applicable here or there. *Id.* at 445. Further, the court observed, because exempt property no longer belongs to the estate, the debtor "may use it as his own." *Id.*[35]

*Gamble* dealt with exempt property rather than property that, as in this case, is not property of the estate. The Court sees no principled basis for distinguishing the case based on this difference. As Subsection IV(B)(1)(b) explains,[36] whether property is excluded from the estate because the debtor exempts it or because it is not property of the estate in the first instance makes no difference in the analysis.[37]

---

**35.** The court quoted *Hall v. Finance One of Georgia, Inc. (In re Hall)*, 752 F.2d 582, 584 (11th Cir.1985), *abrogated on other grounds by Finance One v. Bland (In re Bland)*, 793 F.2d 1172, 1174 (11th Cir.1986) (en banc).

**36.** Text *supra* at pages 424–27.

**37.** *Accord, In re Peebles,* 500 B.R. 270 (Bankr. S.D.Ga.2013).

*Gamble* may be distinguished on other grounds, however. The case involved proceeds from exempt *prepetition* property and addressed only the issue of whether the debtor was entitled to immediate use of the exempt property. Thus, *Gamble* did not consider any issues relating to confirmation or modification of a plan. In particular, *Gamble* did not consider the issue of whether the exempt proceeds could be considered as "disposable income" under the then applicable pre-BAPCPA projected disposable income test, and it did not consider the issue here: whether a trustee may seek modification based on a debtor's receipt of postconfirmation property that is not property of the estate.

Lower courts in the Eleventh Circuit disagree as to whether *Gamble* precludes consideration of proceeds from excluded property in determining disposable income. Consistent with the pre-BAPCPA cases on the issue cited earlier,[38] one view is that the exempt nature of income does not preclude its inclusion as disposable income.[39] The opposite view is that *Gamble* precludes consideration of excluded property as disposable income or its mandatory use to pay creditors under a trustee's proposed modification.[40] A third view is that *Gamble* applies only if no one has timely objected to the debtor's claim of an exemption in the property.[41]

The Eleventh Circuit addressed the effect of *Gamble* on the disposable income issue in an unpublished opinion[42] in *Thomas v. Walden (In re Walden)*, 44 Fed. Appx. 946 (11th Cir.2002).[43] On the same day that the debtor in *Walden* filed her petition, she was in an automobile accident.[44] The trustee and the debtor agreed

**38.** See *supra* notes 30–31.

**39.** *In re Myles*, 2006 WL 6591834 (Bankr. N.D.Ga.2006); *In re Gebo*, 290 B.R. 168 (Bankr.M.D.Fla.2002); *see In re Rodgers*, 430 B.R. 910 (Bankr.M.D.Fla.2010) (stating that social security benefits are properly considered in projected disposable income analysis, without discussing *Gamble*); *In re Salter*, 2007 WL 1076686 (Bankr.M.D.Ala.2007) (concluding that trustee's modification may require debtor to use lump-sum social security benefit to pay creditors, regardless of its exempt nature, without discussion of *Gamble*).

The district court for the Middle District of Florida later ruled in another case that social security benefits are not part of a disposable income or good faith analysis. *In re Vandenbosch*, 459 B.R. 140 (M.D.Fla.2011).

**40.** *In re Peebles*, 500 B.R. 270 (Bankr.S.D.Ga. 2013); *In re Graham*, 258 B.R. 286 (Bankr. M.D.Fla.2001); *In re Hunton*, 253 B.R. 580 (Bankr.N.D.Ga.2000).

**41.** *In re Springer*, 338 B.R. 515 (Bankr. N.D.Ga.2005).

**42.** As an unpublished opinion, the ruling is not binding precedent. Eleventh Circuit Rule 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."). In the absence of any Eleventh Circuit authority on the issue, the Court concludes that it is appropriate to rely on the unpublished opinion. *See In re Malone*, 489 B.R. 275 (Bankr.N.D.Ga.2013).

**43.** The Eleventh Circuit's opinion is unpublished and is not generally accessible. *Walden* was an appeal in a bankruptcy case in the Northern District of Georgia. Because the proceedings material to the opinion occurred prior to this Court's full use of the electronic case filing system, however the portions of this Court's record material to the issues, likewise, are not generally available because they have been archived. The Court has retrieved the paper file from the archives and has directed the Clerk to docket in this case selected portions, including the chapter 13 plan, various pleadings, and the rulings of the bankruptcy court, the district court, and the Eleventh Circuit. [Docket No. 72]. A copy of the Eleventh Circuit's unpublished opinion also appears in this Court's electronic case filing system in the case itself. *In re Betty C. Walden*, No. 99–12191, Docket No. 47.

**44.** Brief of Appellant in *Thomas v. Walden (In re Walden)*, Eleventh Circuit Docket No. 02–10613–EE (Mar. 15, 2002) (hereinafter *"Wal-*

that the claim was a prepetition claim, although the opinions do not mention this issue.[45]

Some six months after the filing of her chapter 13 case and five months after confirmation of her plan, the debtor filed an amendment to her schedules to disclose her personal injury claim and to claim an exemption in it. No one objected to the exemption. When she later filed a motion to approve a settlement of the claim and disbursement of the proceeds to her, the trustee objected to disbursement of the proceeds to the debtor on the ground that the settlement proceeds were disposable income (under the pre-BAPCPA statute) that should be paid to creditors under the plan.

Applying *Gamble*, the lower courts concluded that, in the absence of an objection to the debtor's claim of an exemption, exempt property could not be disposable income and ruled that the debtor was entitled to receive all of the proceeds. The Eleventh Circuit affirmed.

In *Walden*, the trustee squarely presented the legal principles that the Court discusses in Subsection IV(B)(1)(b) to support the position that exempt property may nevertheless be "disposable income," relying on cases such as those this Court cited above.[46] The Eleventh Circuit rejected the trustee's argument, concluding that *Gamble* controlled the outcome.

The *Walden* court thus ruled that proceeds from exempt property could not be "disposable income" and reiterated the *Gamble* conclusion that a debtor may use such proceeds as her own.

In reaching this result, the *Walden* court noted—as did the *Gamble* court—that no one had objected to the debtor's claim of an exemption in the personal injury claim in the first instance.[47] These observations raise the question of whether the two cases effectively announce a procedural, rather than a substantive, rule. Thus, *Gamble* and *Walden* can be read as stating that disposable income may include proceeds from an exempt asset if a party timely objects to allowance of the exemption on the ground that it is disposable income.[48]

But the mere filing of such an objection does not properly control the outcome. Section 522(*l*) states that property claimed as exempt is exempt in the absence of a timely objection. Section 522(*l*) must con-

---

den Brief of Appellant"), 2002 WL 32160818, at *1; Brief of Appellee in *Thomas v. Walden*, Eleventh Circuit Docket No. 02–10613–EE (Apr. 17, 2002) (hereinafter "*Walden* Brief of Appellee"), 2002 WL 32160817, at *2.

45. *Walden* Brief of Appellant, 2002 WL 32160818, at *1; *Walden* Brief of Appellee, 2002 WL 32160817, at *2.

46. *Walden* Brief of Appellant, 2002 WL 32160818, at *5–13. The summary of the trustee's argument includes the following:

 [I]ncome for purposes of section 1325(b) includes income that would be otherwise exempt from attachment under state law. Section 1325(b) is not limited to "non-exempt disposable income" but applies to all income from whatever source which is

made available to the debtor if that income is not needed for the maintenance and support of a debtor or dependent of the debtor. *Id.* at *2.

47. *Thomas v. Walden (In re Walden)*, No. 02–6013, slip op. at 5 (11th Cir. June 13, 2002) ("[T]he Trustee concedes that she did not timely object to the exemption of the settlement proceeds."). The District Court in *Walden* also noted that *Gamble* "may not apply in situations where an objection to a claimed exemption has been timely filed." *Thomas v. Walden (In re Walden)*, Civil Action No. 3:01–CV–52–JTC (Jan. 23, 2003). A copy of the District Court opinion is in the record of this case, Docket No. 72 at 34.

48. *See In re Springer*, 338 B.R. 515 (Bankr. N.D.Ga.2005).

template that the objection invoke the court's determination that the debtor is not entitled to exempt the property because it is not within the applicable exemption allowance or because the exemption statute does not apply to it. It does not permit a denial of a claim of exemption because the property may also be disposable income or available for the payment of claims under a modification. In short, the question under § 522($l$) is whether the property is or is not exempt. Whether it is also disposable income and whether a modification can require its use to pay creditors are different questions, and the answers do not properly depend on whether a party objects to the exemption on those grounds.

*Walden* holds, then, that proceeds from exempt property cannot be disposable income that a debtor must commit to a plan. This holding directly contradicts the rulings of the pre-BAPCPA cases discussed earlier that exempt property could nevertheless be "disposable income"—the argument that the trustee unsuccessfully advanced in *Walden.*

The *Walden* court thus rejected the principle advanced earlier that another provision of the Bankruptcy Code (the projected disposable income statute in the pre-BAPCPA cases and, here, the modification statute) may trump the exemption provisions and require commitment of exempt property to pay creditors. Under *Walden,* the exclusion of property from the estate does matter, and a modification may not require a debtor to use excluded property to pay unsecured creditors.

So under *Gamble,* and particularly as amplified by *Walden,* the trustee's modification does not comply with the mandatory requirements of § 1329 because it does not comply with the provisions of the Bank-

ruptcy Code as § 1325(a)(1) requires. Specifically, the trustee's modification violates the exemption provisions that permit a debtor to retain exempt property as her own and prohibit the involuntary use of excluded property to pay creditors.

## C. Alternative Disposition of Trustee's Modification

The previous Subpart B concludes that the Trustee's modification does not comply with § 1329 because the life insurance proceeds are not property of the estate and because a modification cannot require a debtor to commit property that is not property of the estate to the payment of creditors under applicable Eleventh Circuit authority. This subpart addresses whether the Court, in the exercise of its discretion, would approve the trustee's modification if the Court's two conclusions are erroneous.

Thus, the question is, assuming alternatively either that the proceeds are nonexempt property of the estate or that a postconfirmation modification under § 1329 may require the use of non-estate property, should the Court approve the Trustee's modification?

Section 1329(a) provides that a plan *may* be modified. Accordingly, if a modification meets all of the requirements of § 1329, the Court has the discretion to approve or to disapprove the modification.[49] Section 1329 has no standards to guide the Court in the exercise of its discretion.

As discussed above, courts have concluded that Congress intended to establish a debtor's ability to pay as a standard for original confirmation and to carry that standard forward through the term of the plan. Although ability to pay is impor-

---

**49.** Under 11 U.S.C. § 1329(b)(2), a modified plan becomes the plan "unless, after notice and a hearing, such modification is disapproved."

tant, the proper exercise of discretion does not exclude consideration of other factors. As one court concluded, determination of a disputed request for modification of a chapter 13 plan that seeks to adjust the terms of the originally confirmed plan "properly depends on the fairness of the proposed modification, viewed in light of all the circumstances." [50] It includes consideration "of the two fundamental concepts of a fresh start for debtors and fairness to creditors." [51]

■ Mr. McAllister is 57 years old with a tenth grade education. He worked as a welder and fabricator for approximately 22 years and as a truck driver for the next 19 years. His most recent take-home pay as a trucker was approximately $800 to $900 per month, but he is not now able to work because of arthritis in his knees, hands, and back, for which he must receive medical treatment. In this regard, the Court notes that Mr. McAllister experienced difficulty in taking the witness stand. Moreover, because of various difficulties that his children have experienced, Mr. McAllister has assumed significant responsibility for the day-to-day care of several grandchildren.

Mr. and Mrs. McAllister bought life insurance policies about 14 years ago so that, when the first of them died, the other would have something for retirement. They had no other retirement resources such as a § 401(k) program or Individual Retirement Account. Their only substantial asset was their home, the mortgage on which is being paid under the plan and which had no equity at the time of the filing of this case.

When Mrs. McAllister died, Mr. McAllister received $250,000 from her life insurance policy. The accounting for the use of the proceeds is not exact. Mr. McAllister's attorney now holds $104,023.31 in escrow for the payment of creditors under the Trustee's modification if the Court approves it, and at the time of the hearing Mr. McAllister held approximately $30,000 in remaining proceeds.

Specific expenditures include $30,000 for his wife's funeral, $10,000 for family burial plots next to his wife's, $10,000 in loans to his children, and $8,000 for a used pick-up truck, which he needs to transport his grandchildren. Mr. McAllister spent the remaining $57,000 of proceeds to make his chapter 13 plan payments of $960 per month, for living expenses, including expenditures for the support of his grandchildren, and for other items for his children and grandchildren. Although some of his uses of funds may be questioned (for example, the purchase of a four-wheeler and furniture for a grandchild), it does not appear that, in general, he spent the proceeds to obtain anything near a lavish lifestyle.

Mr. and Mrs. McAllister filed this case under chapter 13 primarily to keep their residence in which they had lived since 1990. Had Mrs. McAllister not died unexpectedly and had Mr. McAllister's physical condition not deteriorated, they would have come out of their case with their residence, Mr. McAllister would continue to work, and the life insurance policies on their lives would provide a source of funds for the survivor's support in later years. Creditors in this case could not have had a different expectation.

Things did not work out that way. Mr. McAllister became unable to work shortly before his wife's death, and she died unexpectedly. Given Mr. McAllister's age,

**50.** *In re Forte,* 341 B.R. 859, 870 (Bankr. N.D.Ill.2005), *citing In re Burgie,* 239 B.R. 406 (9th Cir. BAP 1999).

**51.** *Id.* at 869.

medical condition, and inability to work, it is clear to the Court that Mr. McAllister needs the insurance proceeds that the Trustee's modification would pay to creditors for his future support and for the support of his family.

A primary factor for the Court to consider in exercising its discretion to approve or disapprove a modification is the debtor's ability to pay. It is true, of course, that a substantial amount of money is available to pay creditors in full. But doing so would severely impair an aging, disabled debtor with little prospects for significant future income or any way to replace an asset that he and his wife counted on to sustain them in future years.

■■■ Application of the ability to pay standard requires a realistic assessment of the debtor's financial situation and must include consideration of the debtor's future needs. The need to consider a debtor's future needs arises from the "fresh start" policy of chapter 13 that is one of the fundamental concepts that properly guides a court's discretion.[52] In the circumstances of this case, Mr. McAllister cannot use the proceeds to pay his creditors without substantial harm to future needs. Because of that clear need, he does not have the ability to pay without impairing the "fresh start" that the Bankruptcy Code promises.

Application of the ability to pay standard in this manner is not unfair to creditors. They could not have expected the untimely death of Mrs. McAllister. They did not extend credit on the basis of her life insurance policy, and they are receiving no less than what the original plan promised or what they would receive if this were a chapter 7 case.

In this regard, it is noteworthy that the McAllisters could easily have obtained chapter 7 relief, but at the cost of losing their residence of over 20 years. Their decision to proceed under chapter 13 instead of chapter 7 affected, in reality, only one other creditor: the lender holding a security deed on the home. That lender will receive at least the value of its claim, i.e., the value of its collateral, 11 U.S.C. § 1325(a)(5)(B). Taking into account the additional costs the lender would have incurred and possibly the lower value that the lender would have received if it had proceeded with foreclosure, the result of this chapter 13 case is arguably economically beneficial to the lender.

Mr. McAllister's retention of his home is an important benefit that he received from proceeding under chapter 13 rather than chapter 7. But that benefit does not justify depriving him and his family of the expected benefit of life insurance proceeds upon the death of his wife because it occurred far earlier than anyone expected.

This is not a "windfall" case. A windfall occurs when a debtor receives an unanticipated, fortuitous, and significant benefit without earning it or planning it. Examples of windfalls include a debtor's winning the lottery or receiving a substantial inheritance or life insurance proceeds upon the death of someone other than a spouse.

The situation here differs dramatically in nature and degree from such "windfall" circumstances. A debtor in her 40's with stable employment receiving significant proceeds upon the death of a parent is in a far different situation than Mr. McAllister because she has continuing income for her support and the opportunity in future years to save for her retirement years. Mr. McAllister, in contrast, has neither. And surely Mr. McAllister would prefer to have his wife instead of the insurance mon-

---

**52.** See In re Forte, 341 B.R. 859, 869 (Bankr. N.D.Ill.2005).

ey. His situation is a tragedy, not a windfall.

To the contrary, full payment of the creditors in this case would be a windfall to them. Again, they could not have anticipated this situation and clearly did not rely on it in extending credit or in evaluating their treatment under the original plan. Of course, creditors expected to be paid and did not anticipate that the McAllisters would end up in bankruptcy. Nevertheless, a debtor's bankruptcy is always a possibility; once it happens, consideration of fairness to creditors takes place in the context of bankruptcy principles. No concept of fairness to creditors in a bankruptcy case requires that they receive the benefit of Mrs. McAllister's death due to the fortuitous circumstance that it occurred before the debtors completed their payments under the plan rather than after.

Finally, the Court notes that Mr. McAllister has proposed to commit a significant amount of the proceeds to his unsecured creditors that will permit them to receive almost 15 percent of their claims. This is much more than the creditors would have received in a chapter 7 case and, as such, is a fair result for them.

In the totality of the circumstances of this case, the Court concludes in the exercise of its discretion that it is not appropriate to approve the Trustee's modification.

### V. CONCLUSION

For reasons set forth above, the Court concludes that Mr. McAllister's modification meets the requirements of 11 U.S.C. § 1329 and that the Trustee's modification does not. Alternatively, to the extent that the Trustee's modification complies with § 1329, the Court in its discretion declines to approve it. Because Mr. McAllister's modification meets the requirements of § 1329 and offers more to creditors than they would receive under the original plan, the Court will approve his modification.

It is, therefore, hereby **ORDERED and ADJUDGED** that Mr. McAllister's modification [Doc. 59, 69] be, and it hereby is, **APPROVED** and that the Trustee's modification [Doc. 69] be, and it hereby is, **DISAPPROVED.**

**IT IS ORDERED.**